# OCTOBER, 1937.

STATE OF MISSOURI EX REL. NORMAN B. PITCAIRN AND FRANK C. NICODEMUS, RECEIVERS OF WABASH RY. CO., APPELLANTS, v. PUBLIC SERVICE COMMISSION OF MISSOURI, RESPONDENT.—111 S. W. (2d) 222.

Kansas City Court of Appeals. December 6, 1937.

*Home Hall, R. W. Hedrick, J. H. Miller, N. S. Brown* and *Frank E. Atwood* for appellants.

*Jame P. Boyd* and *Daniel C. Rogers* for respondent.

REYNOLDS, J.—This is an appeal by the receivers of the Wabash Railway Company from the judgment of the circuit court of Cole county affirming the report and the order of the Public Service Commission in a case entitled, "In the Matter of the Application of Blue Motor Transit Lines, Inc., a Corporation, for a Certificate of Public Convenience and Necessity to extend its present route from Excelsior Springs, Missouri, to Kansas City, Missouri, over Missouri Highway No. 10 and U. S. Highway No. 69 and to operate over such extension as an intrastate motorbus carrier."

The Blue Motor Transit Lines, Inc., prior to April 20, 1932, was the holder of Certificate of Convenience and Necessity No. 4, operating as a motorbus carrier in Missouri between Moberly and Excelsior Springs, Missouri, over and along State Route No. 10 and United States Highway No. 24, and the holder of a permit authorizing interstate operation between Quincy, Illinois, and Kansas City, Kansas. On April 20, 1932, it filed an application with the Public Service Commission asking for a Certificate of Convenience and Necessity for the extension of its present route from Excelsior Springs, Missouri, to Kansas City, Missouri. It appears that such application was resisted by the receivers of the Wabash Railway Company; the Chicago, Rock Island & Pacific Railway Company; the Chicago, Milwaukee, St. Paul & Pacific Railway Company; the Kansas City, Clay County & St. Joseph Railway Company; the Kansas City, Clay County Auto Transit Company—other carriers in the territory, either along the line of the applicant's original route or along the line of the extension who, upon being notified of the application, appeared and protested the same.

At a hearing the commission had on May 5, 1932, at Jefferson City, Missouri, evidence was heard both for the applicant and for the protestants. Upon such hearing, the commission made an order denying the applicant the route extension prayed for. The case was reopened by the commission for further hearing on December 1, 1932, on its own motion; and the hearing was set for March 13, 1933, at Jefferson City, Missouri. At such second hearing, additional evidence was introduced by both the applicant and the protestants; and on April 1, 1933, the commission issued its report and order granting the route extension to the applicant without the right to carry passengers originating at Excelsior Springs and intermediate points into Kansas City or passengers originating at

Kansas City, Missouri, and intermediate points into Excelsior Springs, the effective date of which order was extended from time to time until April 15, 1933. On April 12, 1933, the protestants the receivers of the Wabash Railway Company filed with the commission their petition for rehearing. On April 17, 1933, the commission made an order denying the petition for rehearing.

Such receivers of the Wabash Railway Company, thereupon, on May 16, 1933, filed their petition in the circuit court of Cole county, Missouri, for writ of review. On the hearing of such petition, the circuit court of Cole county, at its February term, 1934, affirmed the report and order of the commission. From such judgment of the circuit court the receivers appealed.

The appeal was granted to the Supreme Court. That court, upon an examination of the record, found that none of the constitutional grounds invoking its appellate jurisdiction affirmatively appeared therein and ordered the case transferred to this court.

Upon such case reaching this court, this court held that it had no jurisdiction of such class of cases and dismissed the appeal at its October term, 1936. Thereafter, the receivers of the Wabash Railway Company made application to the Supreme Court for its alternative writ of mandamus against the judges of this court requiring that the judgment of this court dismissing the appeal be set aside and the cause be reinstated on the docket and heard and determined, which writ was by the Supreme Court granted and thereafter was made permanent.

In compliance with such writ, this court and the judges thereof, at its March term, 1937, set aside its said judgment dismissing said appeal and reinstated the cause on the docket; and it has been heard at the present term of this court; and this opinion follows on such hearing.

It follows that all the points made and the exhaustive research shown by both the appellants and the respondent in their respective briefs touching the appellate jurisdiction of this court in this case amount to but "Love's Labor's Lost" and are of no avail. Any question of its appellate jurisdiction in this case is concluded by the action of the Supreme Court in certifying it to this court and granting its writ of mandamus and ordering us to proceed with and to hear and determine it. That this court has jurisdiction must be taken as settled. Nothing further need be said as to such points.

It appears from the record that, prior to February, 1932, the route now operated by the applicant between Moberly and Excelsior Springs had been operated by one William R. Manley. In February, 1932, Manley sold the line to the applicant. Upon such purchase, the applicant filed this application with the Public Service Commis-

sion for the proposed extension of the route. At the hearing on May 5, 1932, the applicant asked and obtained leave to amend its application so as to eliminate therefrom request for authority to transport passengers locally originating at Excelsior Springs and intervening points to Kansas City and originating at Kansas City and intervening points to Excelsior Springs.

The applicant is a Delaware corporation, licensed to do business in Missouri, with an authorized capital stock of $50,000, $10,000 of which has been paid up in cash and equipment. At the time of the filing of the application, the route in question from Moberly west paralleled the line of the Wabash Railway Company as far as Hardin, Missouri. At the time of the hearing on May 5, 1932, the Kansas City, Clay County & St. Joseph Railway Company was operating an interurban line between Excelsior Springs and Kansas City; and the Kansas City, Clay County Auto Transit Company, a subsidiary of the electric line, was operating busses between Excelsior Springs and Kansas City. During the time that Manley operated the line between Moberly and Excelsior Springs, through tickets were sold over his line and the interurban to Kansas City under a traffic arrangement between him and the interurban; and schedules and connections were maintained by his line and the interurban at Excelsior Springs. Passengers from all points east of Excelsior Springs destined for Kansas City, Missouri, who took the Manley line were required to transfer at Excelsior Springs and to take the interurban into Kansas City. Manley had been operating at a loss at the time that he sold; and the applicant, after acquiring the line, operated at a loss. At the time of filing the application herein and at the time of the original hearing, it appears that the territory served by the applicant by its existing route and also the territory to be served by its proposed route as extended were (in addition to the Kansas City, Clay County & St. Joseph Railway Company and the Kansas City, Clay County Auto Transit Company) served in part by five railroads —the Wabash Railway Company; the Chicago, Rock Island & Pacific Railway Company; the Chicago, Milwaukee, St. Paul & Pacific Railway Company; the Chicago, Burlington & Quincy Railroad Company; and the Atchison, Topeka & Santa Fe, some of which were protestants before the commission.

The commission on the first hearing denied the application. One of the principal grounds assigned by it for such denial was the damaging effect which the extension might have upon the operations of the Kansas City, Clay County & St. Joseph Railway Company which operated an electric line from Excelsior Springs to Kansas City. It was considered that the condition of that line was such that the loss from transferred passengers at Excelsior Springs would injure it.

The evidence shows that the operation of the applicant's line under the order made will not compete with the service of the Chicago, Burlington & Quincy Railroad Company between Kansas City and Liberty or with the operation of the Kansas City, Clay County Auto Transit Company or with the Chicago, Rock Island & Pacific Railway Company or with the Chicago, Milwaukee, St. Paul & Pacific Railway Company.

At the second hearing, the evidence shows that the applicant had, just prior to the hearing, temporarily ceased operating its original route by reason of its busses having been attached by creditors; but there is also evidence to show that arrangements had been made to finance and resume operation if the extension asked for should be granted. At the second hearing, the evidence shows that the Kansas City, Clay County & St. Joseph Railway Company had secured from the commission authority to abandon and had abandoned operation and that the transfer service formerly afforded by it to passengers from east of Excelsior Springs over the applicant's line destined for Kansas City had been discontinued.

Other evidence will be noted in the progress of the opinion.

At the second hearing, appearances were made by the applicant and by the receivers of the Wabash Railway Company; the Kansas City, Clay County & St. Joseph Railway Company; and the Kansas City, Clay County Auto Transit Company.

Upon the second hearing, the commission granted the application and made the following order.

"We are of the opinion that the applicant should be permitted to make the extension to determine whether the service now being rendered between Moberly and Excelsior Springs may be saved. It is possible that with through service the applicant may increase its business. Our order, however, will be conditional upon the resumption of service within ten days from the date of this order.

"It is, therefore,

"Ordered: 1. That the route of the Blue Motor Transit Line, Inc., be and hereby is extended from Excelsior Springs to Kansas City, Missouri, without the right to carry passengers originating at Excelsior Springs and intervening points to Kansas City, Missouri, or passengers originating at Kansas City, Missouri, and intermediate points to Excelsior Springs, Missouri.

"Ordered: 2. That the extension herein granted shall not be effective unless Blue Motor Transit Lines, Inc., shall on or before ten days from the date of this order resume operation of its intrastate service between Moberly and Excelsior Springs.

"Ordered: 3. That this order shall be effective ten days from this date and that the secretary of the Commission shall serve certified copies of this order on all interested parties."

From this order, the protesting receivers of the Wabash Railway Company alone prosecute this appeal.

OPINION.

Upon this appeal, the protesting and appealing receivers of the Wabash Railway Company complain of the action of the circuit court in affirming the order of the commission for the reason alleged that the applicant failed to show by the evidence that the extension of the applicant's route granted was required by public convenience and necessity. As will be hereinafter noted, such complaint is not well made.

The questions for us to determine on this appeal are whether the order and decision of the Public Service Commission, affirmed by the circuit court of Cole county, was unreasonable or unlawful and whether or not it was based upon and supported by substantial evidence in the record before the commission. [Sections 5234 and 5246, R. S. 1929; State ex .rel. Missouri, Pacific R. Co. v. Public Service Commission, 297 S. W. 47; State ex rel. Wabash Railway Company v. Public Service Commission, 271 Mo. 155, 196 S. W. 369; State ex rel. St. Louis-San Francisco R. Co. v. Public Service Commission (Mo.), 62 S. W. (2d) 1090.] Of course, it must appear that such order, under the evidence, was also based upon public requirements for public convenience and necessity.

The appellants' application for rehearing before the commission, when boiled down, challenges the order of the commission upon the grounds (1) that it was unsupported by and was against the evidence and (2) that it was a test order which the commission was without any authority to make.

The assignments of error made by the appellants likewise resolve themselves into a challenge of the commission's order on the ground that it was unsupported by and was against the evidence and on the further ground that it was based on assumption, speculation, and test.

Of course, the appellants cannot here rely upon any ground that was not covered by the application for rehearing before the commission. [Section 5233, R. S. 1929.]

The one and only point made by the appellants is that the applicant wholly failed to prove that public convenience and necessity required the proposed extension of service. They elaborate and assign as reasons in support of such point that (a) the service of the carriers in the territory was convenient, efficient, and sufficient; (b) the service of the carriers in the territory was not shown to be inconvenient, inefficient, and insufficient; (c) the evidence failed to show that there was any necessity for additional services; (d) the carriers in the territory were ready, willing, and able to furnish any additional services required; (e) through tickets were not being sold

and convenient schedules were not being maintained at Excelsior Springs by the applicant with the Kansas City, Clay County Auto Transit Company; and (f) the applicant wholly failed to show that it was financially able to furnish efficient service, either over the existing route or over the proposed extension.

The evidence in the record at the time of the original hearing before the commission in May, 1932, shows that the Chicago, Rock Island & Pacific Railway Company; the Chicago, Milwaukee, St. Paul & Pacific Railway Company; the Chicago, Burlington & Quincy Railroad Company; the Atchison, Topeka & Santa Fe; the Wabash Railway Company; the Kansas City, Clay County & St. Joseph Railway Company; and the Kansas City, Clay County Auto Transit Company were operating as passenger carriers over the same territory or portions thereof covered either by the applicant's original route or the proposed extension thereof. It appears that the Atchison, Topeka & Santa Fe served Excelsior Springs through connections made at Henrietta, a station on its line, with the Manley bus line out of Richmond; but it does not appear that it operated through Excelsior Springs. The Wabash Railway paralleled the applicant's bus route from Moberly to Hardin; but it did not serve any point west of Excelsior Springs on the proposed extension to Kansas City, Missouri. It served Excelsior Springs over a short line from the Springs connecting with its main line at Excelsior Springs Junction and by Manley's bus service, connecting with its main line at Henrietta. The Chicago, Burlington & Quincy Railroad operating out of Kansas City paralleled the proposed extended route only to Liberty, Missouri. Both the Chicago, Rock Island & Pacific Railway and the Chicago, Milwaukee, St. Paul & Pacific Railway operating out of Kansas City paralleled it to Excelsior Springs. The Atchison, Topeka & Santa Fe Railroad paralleled a portion of the original route of the applicant between Hardin and Carrollton. It did not serve any of the points from Excelsior Springs into Kansas City along the proposed extension.

The Kansas City, Clay County & St. Joseph Railway Company operated from Kansas City, Missouri, to Excelsior Springs and return, with which line a transfer arrangement was for a while maintained at Excelsior Springs by the applicant's line, by which passengers to Kansas City over the applicant's route from points east of Excelsior Springs were transferred to that line and through tickets were sold to passengers from east of Excelsior Springs to Kansas City, Missouri.

The Kansas City, Clay County Auto Transit Company also operated between Kansas City, Missouri, and Excelsior Springs, and return; but no arrangement ever existed between it and the applicant or between it and the former owner of the applicant's lines for the

transfer to it at Excelsior Springs of passengers desiring to reach points west of Excelsior Springs from the applicant's lines.

The evidence shows that the Wabash Railway Company operated three trains daily through Moberly to Kansas City, Missouri—one at 3:45 A. M. reaching Kansas City at 7:15 A. M.; one at 1:00 P. M. reaching Kansas City at 4:15 P. M.; one at 5:55 P. M. reaching Kansas City at 9:20. It operated three daily trains from Kansas City, Missouri, to Moberly—one leaving Kansas City at 8:50 A. M. and arriving at Moberly at 12:18 P. M.; one leaving Kansas City at 2:00 P. M. and arriving at Moberly at 5:17 P. M.; and one leaving Kansas City at 11:55 P. M. and arriving at Moberly at 3:20 A. M.

There is evidence in the record tending to show that the character of both the local and the through service of the Wabash Railway Company from Moberly to Kansas City was inconvenient and unsatisfactory to a large part of the public and did not meet its requirements and was inadequate to meet the public convenience and its necessity and that, at many of its stations along its line, the daily passenger trains did not stop. They were served, if at all, only by mixed trains. The service was such that a passenger could not go to Kansas City from Keytesville and return the same day. Neither could a passenger use that service and go to Moberly and return the same day. The same situation existed with respect to a number of other stations along its route. It gave no service to intervening points between Kansas City and Henrietta. It afforded no service at reasonable hours to passengers out of Moberly or other stations along its route west thereof and near thereto, desiring to go to Kansas City upon business and to return to their homes on the same day.

4—On the second hearing, the evidence shows that the Kansas City, Clay County & St. Joseph Railway Company had abandoned operation. The situation as to the Chicago, Burlington & Quincy Railroad Company; the Chicago, Rock Island & Pacific Railway Company; the Chicago, Milwaukee, St. Paul & Pacific Railway Company; the Atchison, Topeka & Santa Fe; and the Kansas City, Clay County Auto Transit Company was unchanged, except that the auto transit company had increased its service. The same situation remained as to the Wabash Railway Company, except that it had discontinued the short line formerly operated between Excelsior Springs and Excelsior Springs Junction.

The evidence further shows that there is no bus company rendering motor transportation service from points east of Excelsior Springs to points west of Excelsior Springs and into Kansas City, Missouri, other than the applicant; that its line is the only bus line operating from Moberly west; and that it serves a number of towns

along the route—namely, Huntsville, Keytesville, Brunswick, Carrollton, Norborne, Hardin, Richmond, and intervening stations.

As to the service of the Wabash Railway Company, the passenger agent of such company, Mr. Blatterman, testified upon the second hearing that, so far as the movement of passenger business over that line was concerned, there was no one using the service and that there were certain stations along the line at which its trains did not stop at all.

There is evidence tending to show that there is a demand for through bus service at reasonable hours and upon reasonable schedules into Kansas City from all points on the route of the applicant east of Excelsior Springs. There is also evidence tending to show that the transfer at Excelsior Springs from the applicant's line to other connecting carriers was inconvenient and burdensome to the public by reason of the delays and lay-overs incident thereto and that there was much objection thereto. There is evidence that there was a demand for direct service over the applicant's line from all points thereon east of Excelsior Springs and for through motor service to Kansas City, Missouri, and that the public convenience and necessity required such service. Prominent citizens along the route from Moberly west, city officials, business and professional men, and others testified to such demand and the requirement for such service to meet the public convenience and the necessity and to the inadequacy of the railroad service furnished.

The evidence tends to show that railroad service at Norborne was inconvenient and that to go from Norborne to Richmond, Elkland, Liberty, Avondale, or North Kansas City, one had to go to Kansas City and take a bus back to those towns or transfer from one bus to another en route. There is evidence tending to show the unsatisfactory character of the service requiring transfers at Excelsior Springs to other lines en route to Kansas City and lay-overs on account of such transfers, amounting at times to an all-night stay at Excelsior Springs, and of its great inconvenience.

There is evidence tending to show a demand by the students attending William Jewell College at Liberty for service of a direct character from Liberty to their homes at Richmond, Carrollton, and other points east.

The evidence tends to show that the bus service proposed to be given by the applicant, if its line be extended, will be such as to furnish passengers from all points east of Excelsior Springs going into Kansas City the opportunity to go at reasonable and convenient hours and to transact their business and return to their homes the same day at reasonable times. It is apparent from the evidence that the service afforded by the Wabash Railway Company does not do this, especially from points such as Moberly, Keytesville,

Brunswick, Dalton, DeWitt, Huntsville, Miami, and others, and that such service is inadequate and unsuited to the needs and the demands of the public.

It is apparent from the evidence that the Chicago, Burlington & Quincy Railroad Company and the Chicago, Rock Island & Pacific Railway Company and the Chicago, Milwaukee, St. Paul & Pacific Railway Company are not affected by the order of the commission granting the proposed extension for the reason that the commission, by its order, granted such extension without any right in the applicant to invade their territory or to carry passengers originating at Excelsior Springs and intervening points to Kansas City, Missouri, or passengers originating at Kansas City and intervening points to Excelsior Springs, Missouri. The applicant is not permitted to come in competition with them. They are, therefore, not adversely affected by such decree. The Kansas City, Clay County Auto Transit Company is affected by such order to the extent only that it may be deprived of the transfer business from the applicant's line at Excelsior Springs, of which it might otherwise to some extent be the beneficiary. However, from the evidence, without such extension, the applicant's line would be unable to operate; and there would be no transfers. The evidence tends to show, however, that there were few, if any, transfers ever handled by the Kansas City, Clay County Auto Transit Company, so that it is very slightly affected by such order and is not in any event affected to an extent sufficient to impair its present operations.

In view of the statement by the witness, Blatterman, general passenger agent of the Wabash Railway Company (the only appealing protestant), that there was no one using the service of that railroad, the commission, with such statement and other evidence in the record, was justified in finding that an order extending the applicant's route, whereby it would be given the opportunity to furnish through service over its lines into Kansas City from all points along its route east of Excelsior Springs, would not adversely affect the Wabash Railway Company to any material extent.

5 —The fact that the Wabash Railway Company and other carriers were operating in territory over which the applicant's route was being operated and along the line of its proposed extension did not prevent the commission from making its order granting to the applicant the proposed extension; provided that, in the opinion of the commission, the public convenience and necessity were promoted by so doing, even though the service being furnished by the Wabash Railway Company and other carriers was convenient and adequate and even though such other carriers were adversely affected thereby. [Sub-section A of Section 5268, pp. 307-8, Laws of Missouri, 1931.]

The sub-section above referred to, among other things, provides:

"In determining whether or not a certificate of convenience and necessity shall be issued, the commission shall give reasonable consideration to the transportation service being furnished by any railroad, street railroad or motor carrier, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout twelve months of the year, and the effect which such proposed transportation service may have upon other transportation service being rendered. Provided, however, no vested right shall accrue to any certificate of convenience and necessity; and provided further, that the issuance of a certificate of convenience and necessity to one carrier shall not prohibit the granting of such a certificate to another carrier over the same route if in the opinion of the commission the public convenience and necessity will be promoted by so doing."

The latter clause of said section providing that the issuance of a certificate of convenience and necessity to one carrier should not prohibit the granting of such a certificate to another carrier over the same route if in the opinion of the commission the public convenience and necessity would be promoted by so doing appears for the first time in said sub-section. The effect of such clause of the statute is to vest the commission with the authority to issue a certificate of convenience and necessity to a carrier when, in its opinion, the public convenience will be promoted by so doing, notwithstanding the route or territory to be served is already being served by another carrier, where such authority did not exist before, so that the limitations of the statute prior to the enactment of such clause upon the discretion of the commission, as construed by the Supreme Court in State ex rel. and to the use of Detroit-Chicago Motor Bus Co., Inc., v. Public Service Commission, 324 Mo. 270, 23 S. W. (2d) 115, and other cases cited by the appellants, under statutes prior to the act of 1931 which did not carry such clause or other similar provision, have been modified to the extent at least of permitting the commission in its discretion to grant a certificate of convenience and necessity, as above indicated, to any carrier when in its opinion the public convenience and necessity will be promoted by so doing, notwithstanding such a certificate had been issued to another carrier. Such clause above noted, incorporated in the act of 1931, is but declaratory of the spirit of the policy of the Public Service Commission Act as declared by the Supreme Court in State ex rel. Electric Company of Missouri v. Atkinson, 275 Mo. 325, l. c. 337, 204 S. W. 897, where it is said: "Let it be conceded that the act establishing the Public Service Commission, defining its powers and prescribing its duties is indicative of a policy designed, in every proper case, to substitute regulated monopoly for destructive competition. The spirit of this policy is the protection of the public. The protection given the utility is in-

cidental. . . It is to be kept in mind, nevertheless, that the rule is not a fine-spun theory, applicable without discrimination in every case where competition seeks to enter. It is held to be a practical system designed, as stated, to promote the public good and the particular facts in each case are to be regarded in applying it.''

6.—It is to be assumed that the commission gave the evidence as to the service being rendered by the other carriers and the quality and extent thereof, the willingness (if any) of such carriers to furnish further transportation, the likelihood of the proposed service being permanent and continuous throughout twelve months of the year, and the effect which the proposed transportation to be rendered by the applicant would have on other forms of transportation service due consideration and yet found, under the evidence, that public convenience and necessity would be promoted by granting the extension asked by the applicant and that the likelihood was that the proposed service would be permanent and continuous throughout the twelve months of the year and, in doing so, also gave due consideration to the effect which such proposed extension might have upon other forms of transportation service in the territory and to the willingness (if any) of other carriers engaged in such to furnish additional service where required. Furthermore, the record does not show that the receivers of the Wabash Railway Company made any offer to furnish any additional or further service to that being given by them at the time of the hearings or made any request to be permitted to furnish further service.

That the commission had ample evidence before it upon which to base its opinion that the public convenience and necessity would be promoted by the granting of such extension, notwithstanding the service being furnished by other carriers and the further service (if any) which such other carriers were willing to furnish, is fully shown in the record.

There was testimony by witnesses acquainted with the cost of equipment, maintenance, and operation that, if the proposed extension be granted, the applicant's line could be maintained and operated successfully with a profit but that, if not granted, the existing route could only be operated at a loss and that the arrangements made for future and permanent operation were sufficient and satisfactory.

The evidence in this case reveals that the Blue Motor Transit Lines, Inc. (the applicant), being limited to its route from Excelsior Springs to Moberly, cannot operate at a profit. The officials of this line testified that, if it was granted the proposed extension, it could continue rendering service over its present route and over the proposed extension at a profit; that financial arrangements had been perfected of a satisfactory and substantial nature for its con-

tinued operation, based upon an order of the commission granting the proposed extension; and that, without such order, it could not continue operation.

The commission has by its order secured for the public the continuance of service from Moberly to Excelsior Springs and intervening points and, in addition, has secured for it a direct service to Kansas City, Missouri, from all such points, in place of the inconvenient, joint service through transfer at Excelsior Springs, which is in response to the spirit of the policy of the statute.

The commission in its order granted the proposed extension, asked for, on condition that, as a pre-requisite to the effectiveness of the order, the Blue Motor Transit Lines, Inc., resume its operation (which had been temporarily suspended) within ten days after the making of the order, which eliminates the appellants' objection that it was not in operation at the time the order was made. No question seems to have been raised, so far as is shown by the record, but that the applicant has fully complied with all the conditions upon which said order was based. The order is in conformity with the spirit of the policy of the statute and looks to the necessity and convenience of the public, which is the paramount consideration to be realized.

7. The appellants complain that the applicant wholly failed to show that it was financially able to furnish dependable service, either over its existing route or over the proposed extension. In answer to this, it is only necessary to state that no such point or complaint appears to be presented in its motion for rehearing before the commission; and it is not, therefore, to be urged or relied upon by the appellants here. [Section 5233, R. S. 1929, supra.]

8. That the applicant was not in actual operation of its original route at the time the order complained of was made by the commission is immaterial in view of the fact that the commission by such order required that operation be resumed by it within ten days after the making of such order, before such order should become effective. Moreover, its suspension of activities at the time appears from the evidence to have been more or less of a temporary character.

9. The commission by its order has secured for the public the continuance of adequate bus service from Moberly to Excelsior Springs and intermediate points and in addition has secured for it a direct, through service from such points to Kansas City, Missouri, in place of the inconvenient, joint service through transfer to other lines at Excelsior Springs. We think that the evidence amply shows that such service is justified as a matter of public convenience and necessity and that the commission's order was not

unreasonable, arbitrary, and unjust but, upon the other hand, was reasonable and just.

10. The fact that the order complained of was a test order, or was in the nature of a test order, is immaterial. A test order is within the authority of the commission to make. [State ex rel. Campbell Iron Co. v. Public Service Commission of Missouri, 317 Mo. 724, 296 S. W. 998; State ex rel. Washington University v. Public Service Commission of Missouri, 308 Mo. 328, 272 S. W. 971.]

It is held in the above cited cases and others that the best way in which to determine the reasonableness of rates fixed by the commission is through test orders, and the making of test orders in those cases is approved. If the commission had authority to make test orders involving the question of the reasonableness of certain rates involved in those cases, there is no reason apparent why it does not have such authority in this case to test the reasonableness of its order and determine whether or not the service now being rendered by the applicant's line between Moberly and Excelsior Springs can be saved and to determine whether or not its business and revenues would be increased by the extension and through service from Moberly to Kansas City, Missouri, to an extent sufficient to insure profitable operation and meet requirements of public convenience and necessity.

The judgment of the circuit court affirming the report and order of the commission is affirmed. All concur.