Appeal by the Public Service Commission from a judgment of the Circuit Court of Cole County setting aside an order of the commission on the ground that same is "unreasonable and unlawful." On the 11th day of January, 1928, The Alton Transportation Company, a subsidiary of the Chicago Alton Railroad Company, all the stock of the transportation company, except qualifying shares, being owned by the Receivers of the Railroad Company, *Page 1142 
filed an application with the Public Service Commission for a certificate of public convenience and necessity authorizing it to operate as a motor carrier between Mexico and Jefferson City, Missouri, upon Missouri-U.S. Highway No. 54. The Chicago Alton Railroad Company owns and operates a line of railroad, approximately fifty miles in length, running south from Mexico, Missouri, through Auxvasse, McCredie, Fulton, Carrington, Guthrie, New Bloomfield, Hibernia, North Jefferson and Cedar City terminating at South Cedar City on the north side of the Missouri River opposite Jefferson City. Missouri-U.S. Highway No. 54 very closely parallels this line of railroad from Mexico to Jefferson City and Mexico, Auxvasse, McCredie, Fulton, New Bloomfield, Hibernia and Jefferson City are served by the highway. Applicant sought a certificate permitting it to operate a line of motor busses over this highway, as a common carrier, between Mexico and Jefferson City and all intermediate points. A hearing upon the application was had before the Commission on March 30, 1928, at which the granting of a certificate was opposed by the Greyhound Lines, Inc., a duly certified motor carrier corporation then operating a bus line over Highway No. 54 between Fulton and Jefferson City and serving the intermediate points. In 1927 Joseph A. Randazzo and Anna Randazzo applied for and the Commission granted them a certificate of public convenience and necessity to operate a motor bus line upon highway 54 between Fulton and Jefferson City and intermediate points. Pursuant to that authority the Randazzos began the operation of such line. Thereafter they sold the business to the Greyhound Lines, Inc., and on December 31, 1927, and before the filing of the application herein, the Randazzo certificate was transferred, with the consent and approval of the Commission, to the Greyhound Lines, Inc. No motor bus service whatsoever was in operation between Mexico and Fulton. The evidence on behalf of applicant was that the Chicago Alton Railroad Company's line was the only railroad directly and immediately serving Fulton and the towns on Highway No. 54 between Mexico and Jefferson City; that it had been operating that line of railroad for more than forty years, affording that territory adequate transportation facilities by rail, had large investments in railroad property in the counties of Audrain and Callaway which this line traverses and had contributed to the progress and up-building of that section of the State; that the passenger business of the railroad company had decreased and its revenue from that source been greatly reduced in recent years due to increasing travel by private automobile and motor bus lines; that it was then operating two gasoline-motored passenger trains daily, each way, over its railroad between Mexico and South Cedar City where passengers were transferred by motor busses, operated by the Missouri Power Light Company, of Jefferson City, under an arrangement with the railroad company, *Page 1143 
to Jefferson City and that it was operating an additional motor train, each way, daily between Mexico and Fulton, making three trains each way daily between Mexico and Fulton; that the operation of the proposed through line of motor busses between Mexico and Jefferson City supplementing their train service on the Mexico-Jefferson City line and connecting at Mexico with their main line trains going to Chicago, St. Louis and Kansas City would afford additional, convenient and needed through transportation facilities between Mexico and Jefferson City. The evidence offered by the protestant, Greyhound Lines, Inc., was that it operated three, well equipped, twenty-nine passenger seating capacity parlor motor busses, each way, between Fulton and Jefferson City daily; that it had purchased the franchise and business from the Randazzos of date of December 31, 1927, with the consent and approval of the Commission, and had thereupon placed a better type of motor busses in use on this line than had been theretofore operated; that a motor bus of the type used by it on this line cost $12,000; that since it had owned and operated this line, being January, February, and twenty days in March, 1928, next preceding the date of the hearing, its busses had carried an average of six passengers per trip; that the minimum cost of operation was twenty-five cents per mile and that for the period from January 1, to March 20, 1928, the receipts had averaged slightly more than twenty-one cents per mile; that its business ran upon regular schedules which were maintained and that its service adequately and sufficiently met the needs and convenience of the public desiring to travel by motor bus between Fulton and Jefferson City and intermediate points and there is no testimony to the contrary. All the evidence touching the operation of protestant bus line shows that it maintained ample, satisfactory and convenient motor carrier service sufficient to meet all requirements and demands of the territory served and that it was equipped to carry a much larger volume of passenger business than was carried. Protestant made a showing that it was able and willing to provide any additional facilities which, in the opinion of the Commission, public convenience and necessity might require upon the route covered by its certificate.
On December 19, 1929, the Commission made its report finding as follows:
"In view of all the testimony in this case, the Commission finds that there is a public convenience and necessity for the proposed motor carrier service with the exception that there is no showing of a necessity for additional motor carrier service between Jefferson City and Fulton. It appears, therefore, that a certificate of convenience and necessity authorizing the applicant to operate as a motor carrier between Mexico and Jefferson City, ever the proposed route, but without authority to transport passengers from Fulton to Jefferson *Page 1144 
City, from Jefferson City to Fulton, or from any point between said cities to another point between them, should be granted the applicant. The Commission cannot find there is a necessity for an additional motor carrier between Fulton and Jefferson City in view of the showing that there is now an authorized motor carrier between said cities who is able and willing to furnish any additional service that may be needed, but we do find, in view of all the evidence, that there is no necessity for additional motor service between said cities."
The order issued by the Commission was in conformity with this finding. Pursuant to Section 5234; Revised Statutes 1929, applicant obtained a writ of review from the Circuit Court of Cole County. That court, upon a review of the proceedings had before the Commission, set aside the order of the Commission as being "unreasonable and unlawful" and remanded the cause, from which judgment the Commission appealed.
Our statute in reference to the transportation of passengers by motor carriers within this State requires that, "before any such person, firm or corporation shall hereafter begin the operation of any route or shall hereafter extend any existing route, it shall first obtain from the public service commission a certificate that the present or future public convenience and necessity require or will require the establishment of such route or such extension" (Section 5264, R.S. 1929) and forbids "any motor carrier to operate or furnish service within this State without first having obtained from the commission a certificate declaring that public convenience and necessity will be promoted by such operation." [Sec. 5267, R.S. 1929.] If, upon application to the Commission for a certificate, "the commission shall find from the evidence that public convenience and necessity will be promoted by the creation of the service proposed, or any part thereof, as the commission shall determine, a certificate therefor shall be issued." [Sec. 5267, R.S. 1929.] Thus the power "to grant or to refuse to grant" a certificate of public convenience and necessity authorizing an applicant to operate as a motor carrier "is committed to the discretion of the Public Service Commission within defined limits and not to the circuit court or to this court." [State ex rel. Detroit-Chicago Motor Bus Company v. Public Service Commission, 324 Mo. 270,23 S.W.2d 115.] The Commission after hearing the evidence determines therefrom whether public convenience and necessity require the establishment of the proposed motor line and absent, as here, the facts from which the presumption created by Section 5278, Revised Statutes 1929, arises, the burden is on the applicant to prove that the operation of the proposed motor bus line "is necessary for public convenience." [State ex rel. Henson v. Brown,326 Mo. 230, 31 S.W.2d 208.] While all orders of the Commission are subject to judicial review (Sec. 5234, *Page 1145 
R.S. 1929) the court is confined upon review to a determination of whether, under the facts as found by it, such order is reasonable and lawful. If the reviewing court finds the order both reasonable and lawful its duty is to affirm it. If the order be found to be "either unreasonable or unlawful" it should be set aside. [State ex rel. Detroit-Chicago Motor Bus Company v. Public Service Commission, supra; State ex rel. Missouri Pacific Railroad Company v. Public Service Commission (Mo. Sup.),327 Mo. 249, 37 S.W.2d 576.] "In determining whether or not a certificate of convenience and necessity should be issued" the Commission is required by statute (Section 5267, R.S. 1929) to "give reasonable consideration to the transportation service being furnished" by other carriers and "the effect" which the proposed service may have on other existing forms of transportation service. The position of the Chicago Alton Railroad Company, the real party in interest in the application, is reduced to this contention, that under the facts of this case, showing that for more than forty years it has served the territory between Mexico and Jefferson City with rail transportation service, that Highway No. 54 closely parallels its line of railroad between the two points, that it has suffered losses in its passenger carrier business attributable to the use by the traveling public of private automobiles and motor carriers and that it has large investments in railroad property in this State, its subsidiary should be granted a certificate to operate the proposed motor bus line without regard for the situation existing in reference to the established and certified motor carrier already operating over a part of the proposed through route and regardless of the effect the proposed new and additional service over that part of such route then being adequately, satisfactorily and conveniently served by such certified motor carrier, might have upon such carrier. The statutes of this State relating to the establishment and regulation of motor carrier service do not support such contention and are to the contrary. If no certified motor carrier were operating on this route and the railroad company through its subsidiary and an independent motor carrier were each applying for a certificate then the considerations urged by applicant would seem to require that "in accordance with justice and sound business economy" the railroad company, being the transportation utility already in the field, should "be given an opportunity to furnish the required service." [Egyptian Transportation System v. Louisville N.R. Company, 321 Ill. 580, 152 N.E. 510.]
A somewhat similar situation is found in State ex rel. Missouri Pacific Railroad Company v. Public Service Commission (Mo. Sup.),327 Mo. 249, 37 S.W.2d 576. In that case the Missouri Pacific Railroad Company through its subsidiary sought a permit to operate as a motor carrier between Kansas City and Joplin, over State Highway U.S. No. 71, serving intermediate points. The Missouri Pacific Railroad *Page 1146 
Company operates a line of railroad from Joplin to Pleasant Hill, Missouri, where it connects with that company's main line between St. Louis and Kansas City. Highway No. 71 "practically parallels the railroad from Joplin to Harrisonville some ten miles south of Pleasant Hill. From Harrisonville it runs northwestardly to Kansas City." At the time the application was filed three certificated motor carriers were operating over different sections of the proposed route. One bus line was operating between Kansas City and Nevada, a second between Nevada and Joplin and the third between Carthage and Joplin. The Public Service Commission refused to grant a certificate and the circuit court, upon review, set aside the order of the Commission as being unreasonable and unlawful. It appears that the railroad company in that case made substantially the same contention which respondent (relator below) makes in this case and this court said:
"If this were a case in which a railroad company, directly or through a subsidiary, and one or more independent motor carriers were each applying for a certificate to operate over a highway paralleling the railroad, and on which duly certificated motor carriers were not already operating, we would have a different situation with which to deal. Such was the situation in most of the cases cited and relied upon by respondents, and in such case there is strong and appealing argument in favor of giving preference to the railroad company or its subsidiary. As argued by respondents, the railroads have helped greatly to develop the country, they have large investments, can assure permanency of service and satisfaction for injuries from accidents, and they pay large sums in taxes. But, while such is true, other duly authorized public utilities are also entitled to consideration. As said in Monongahela West P.S. Co. v. State Road Commission (W. Va.), 139 S.E. 744, 748: `The holder of the permit over the established route is entitled to the same protection and consideration as any other public utility.' To hold otherwise would be unwise policy as well as unjust.
"We have no such situation in this case. Here we have duly certificated motor carriers already in the field, furnishing adequate and satisfactory service, willing and able to furnish any additional facilities and service which may be needed or which the commission may order."
The case was remanded by this court with directions to the circuit court to enter its judgment affirming the order of the Commission.
By the order under review here the Public Service Commission gave consideration to the transportation service being furnished by the established and existing carrier operating under certificate over Highway No. 54 between Fulton and Jefferson City. While applicant makes no formal admission that the service furnished by protestant is adequate and sufficient to serve the needs, demands and convenience *Page 1147 
of the public along that portion of the proposed route served, it makes no showing to the contrary. All the testimony in the case relating to the service rendered by the certified carrier between Fulton and Jefferson City was that such service was satisfactory and adequate, fully serving the needs and convenience of the public upon and along that route and the Commission properly found that the public convenience and necessity did not require the operation of additional motor carrier service between Fulton and Jefferson City. However the Commission found that public convenience and necessity would be promoted by permitting and authorizing applicant to operate as a motor carrier upon Highway No. 54 between Mexico and Fulton and all points intermediate and in through service between Mexico and Jefferson City and issued its order accordingly. As to the Mexico and Jefferson City service the order, as made and issued, permits applicant to carry passengers received at Mexico, or intermediate points north of Fulton, to Jefferson City or to any point between Fulton and Jefferson City and to carry passengers received at Jefferson City to Mexico or to any intermediate points north of Fulton and passengers received at any point between Jefferson City and Fulton to any point north of Fulton.
Under the facts and in view of the statute defining the considerations which shall control the determination of whether a certificate shall be issued, we do not find the order of the Commission herein to be either unreasonable or unlawful and therefore the judgment of the circuit court is reversed and the cause remanded with directions to that court to enter its judgment affirming the order. Sturgis and Hyde, CC., concur.