STATE OF MISSOURI EX REL. INTERSTATE TRANSIT LINES, APPELLANTS,
v. PUBLIC SERVICE COMMISSION OF MISSOURI ET AL., RESPONDENTS.
—132 S. W. (2d) 1082.

Kansas City Court of Appeals.   June 19, 1939.

*T. W. Bockes* and *Watson, Ess, Groner, Barnett & Whittaker* for
appellant.

*Charles A. Orr* for appellant, V. C. Ringo.

*J. H. Linton, H. J. Nelson, R. W. Hedrick* and *Russell B. James* for respondent, Burlington Transportation Co.

SHAIN, P. J.—This is an appeal from the judgment of the Circuit Court of Cole County, Missouri, affirming orders and decrees of the Public Service Commission of Missouri.

The outstanding facts and questions involved are well stated by the commission in its report as follows:

"On March 11, 1935, Burlington Transportation Company filed application for a certificate of convenience and necessity to operate as a passenger-carrying motor carrier over a regular route between

the cities of St. Joseph and Kansas City, Missouri, over U. S. Highways 59 and 45. On the same day V. C. Ringo, an individual, filed his application, numbered B-4145, for a certificate of convenience and necessity to operate as a passenger-carrying motor carrier over a regular route covering part of the same route applied for by the Burlington Transportation Company, namely, running from Rushville over U. S. Highway 45 to Parkville. The Burlington Transportation Company's application was in effect an application for an extension of its existing intrastate certificate of public convenience and necessity No. 26, since under that certificate it already had the right to operate as a passenger-carrying motor carrier from St. Joseph north to the Iowa-Missouri line on Highways 275 and 71. In its application it also asked for the extension of its existing interstate permit (which covered the same route as its existing intrastate certificate) to Kansas City, Missouri, over said Highways 45 and 59. These highways were not at the time of the filing of the application entirely completed. In point of fact they are just now being opened to public travel as hard surfaced highways. The Burlington application therefore, requested permission to operate temporarily over the unopened portion of said highway between Beverly and St. Joseph following State Highway 92 and U. S. Highway 71. Subsequently, and on May 20, 1935, the Burlington Transportation Company filed an amended application somewhat restricting its previous request as to points to be served, but otherwise asking in general the authority covered in its original application.

"Subsequently, Interstate Transit Lines, a corporation of Nebraska, and holder of interstate and intrastate authority to operate between St. Joseph and Kansas City over two routes, namely, U. S. Highway 169 and U. S. Highway 71, filed protest to the application of the Burlington Transportation Company. Burlington Transportation Company filed answer and protest to the application of V. C. Ringo. Ultimately, the two applications were by the Commission set for hearing on the same day, June 3, 1935, and after due notice to all interested parties were heard by three commissioners on June 3 and 4, 1935. At the hearing the applicant and Ringo appeared by counsel, the Interstate Transit Lines and Missouri Pacific Transportation Company appeared by counsel, and after an extensive hearing the case was submitted on the record with leave given to file briefs. Very extensive briefs were filed by all the parties in interest and have been given careful consideration by the Commission.

"On the 25th day of September, 1935, responsive to a request of the Burlington Transportation Company, the Commission passed upon the portion of the application of the Burlington Transportation Company for interstate authority. The Commission expressed in its report and order its feeling that since the Commission is not

authorized to require proof of convenience and necessity for the proposed interstate service and since the Congress of the United States had recently enacted a Federal law governing the interstate operations of motor carriers of passengers and freight by motor vehicles, it saw no reason to refuse the request respecting this portion of the application. Accordingly it issued on the 25th day of September, 1935, its report and order granting the Burlington Transportation Company an extension of its Interstate Permit No. 26 so as to authorize said applicant to serve as an interstate carrier of passengers and express between St. Joseph and Kansas City over U. S. Highways 59 and 45 in interstate commerce exclusively. The order further provided that pending the process of reconstruction of said Highway 45, said interstate operations might be operated as a detour over U. S. Highway 71 where necessary. The order further provided that the Commission retain jurisdiction of the case to pass upon the portion of the application requesting intrastate authority as described in said application.''

It will be noted that in all hearings had the application of the respondent herein was heard together with the application of V. C. Ringo, involving part of highway covered by application of respondent herein. The Ringo case will require a separate opinion and all consideration of same is eliminated insofar as this opinion is concerned.

The Interstate Transit lines, hereinafter referred to as appellant, in its brief filed herein states:

''In said application authority was sought to carry passengers and their baggage in intrastate operations between St. Joseph and Kansas City, Missouri, via the said Highways Nos. 39 and 45, through the intermediate towns and communities of Rushville, Armour, Bean Lake, Iatan, Weston, East Leavenworth (Beverly), Farley, Waldron Junction, Parkville and North Kansas City. At the time said application was filed and at the time of the hearings in June, 1935, and April, 1936, the Highway 45-59 route was entirely unimproved from the city of Weston, in Platte County, Missouri, north to the south Buchanan County line, and approximately ten miles of the right-of-way of said route north of Weston had never at any time herein mentioned been acquired by the State of Missouri or improved in any way, and to that extent said route was at all times herein mentioned non-existent (R. 328, 342, 349-50).

''On May 25, 1935, the applicant filed its amended application with the Commission (R. 95-107), in which it sought substantially the same authority requested in its original application, but further sought authority to operate small, light vehicles over the passable portions of its proposed Highway 45-59 route pending acquisition of the remainder of the necessary right-of-way by the State and the improvement and surfacing of all of said route. In said amended

application the applicant asked that it be permitted to operate its heavy through motor buses in intrastate service over a so-called detour on this appellant's certificated Highway 71 route between Kansas City and St. Joseph, via Parkville, seeking authority to accept and discharge passengers at the points of Kansas City, Parkville and St. Joseph already served by appellant on said route, and as a part of said so-called detour, sought authority to operate over County Highway H from the city of Weston on its proposed Highway 45-59 route, northeasterly to Highway 71 at New Market, thence proceeding on appellant's route to and from St. Joseph.''

Appellant summarizes its position as follows:

''. . . that there was no public convenience or necessity to be served by the applicant's proposed service; that the service operated by appellant over its two routes between St. Joseph, Parkville and Kansas City afforded much more accommodation than the traveling public needed or desired; that if the Commission believed there might be need for any additional service, appellant was able and willing to operate same; that appellant's service had been established and built up during the early years of unimproved highways at great expense to appellant and to its predecessors, during which time the applicant's parent company was curtailing and eliminating a large part of its railway service between St. Joseph, Parkville and Kansas City; that in addition to the transportation service operated by appellant between St. Joseph and Kansas City, other frequent and convenient passenger service is afforded by Chicago, Burlington & Quincy Railroad Company, the parent of which the applicant is the subsidiary, Chicago Great Western Railroad Company and Missouri Pacific Transportation Company; that inasmuch as a great part of the applicant's proposed Highway 45-59 route was unimproved and impassable, and a large part of it had never been acquired by the State and was non-existent, the application was not filed in good faith with any idea of furnishing service to the small unserved communities located along part of said route, but was in fact a thinly disguised attempt on the part of the applicant to establish itself, through a so-called temporary detour, as a competitor of appellant for the established St. Joseph-Parkville-Kansas City travel over appellant's Highway 71 route; that through travel from all of the appellant's lines north of St. Joseph to points south of St. Joseph was small in amount, an no inconvenience could result to passengers through interchanges from applicant's buses to appellant's buses at St. Joseph, inasmuch as both carriers used the same station, the stop is necessarily a rest stop where passengers of both carriers must alight, and where all transfers of baggage are made from bus to bus for the passengers by station attendants.''

Appellant makes twenty-five assignments of error. However, appellant consolidates its contentions into eight specific points. We will review the case from a consideration of these points.

Appellant's point No. 1 is as follows:

"The burden of proof is upon applicant to establish public convenience and necessity requiring its proposed service. The applicant failed to sustain the burden of proof and the Commission had no power to grant the authority sought by Burlington Transportation Company."

No review of this case can be intelligently made without giving careful consideration of the phrase "public convenience and necessity."

The Public Service Commission of Missouri, an agency of the legislative branch as distinguished from the Judicial, has definitely passed on the above insofar as this case is concerned. The Circuit Court of Cole County has affirmed the conclusions of the commission. One of the most difficult tasks assigned to appellate courts is that of reviewing the findings, orders and decrees of a non-judicial body. . There has been assigned to the Public Service Commission grave duties and in reviewing same due regards must be given to its delegated powers and to the limitations thereof. On first impression, the question of "public convenience and necessity" impresses as merely an issue of fact. However, when consideration is given to the judicial utterances which are cited we become much impressed with the fine distinctions of law that must be considered in determining such an issue.

Under our scheme of government, the judicial function must always find function when relative rights are in controversy. This is so because one person's rights must be held to end when its exercise infringes upon the equal rights of another. There also enters into such solution an interest that transcends that of the individual, to-wit, the interests of the public. In this State the public at its cost has constructed a wonderful system of highways. When these highways are utilized by individuals or corporations for business and profit, we have wisely restricted such use to public convenience and necessity and when same has been met the rights of the unauthorized for such purposes has prohibitions. However, such prohibitions owing to comity are confined principally to intrastate use.

Under point No. 1, the appellant cites numerous authorities. Upon examination we conclude that the law of this case is well defined in Alton Transportation Co. v. Public Service Comm.. 329 Mo. 1139, 49 S. W. (2d) 619.

In the above case the full scope of the powers of the commissions and the duty of courts of review are clearly stated as follows:

"Thus the power 'to grant or to refuse to grant' a certificate of public convenience and necessity authorizing an applicant to operate as a motor carrier 'is committed to the discretion of the Public Service Commission within defined limits and not to the circuit court or to this court.' [State ex rel. Detroit-Chicago Motor Bus Com-

pany v. Public Service Commission, 324 Mo. 270, 23 S. W. (2d) 115.] The Commission after hearing the evidence determines therefrom whether public convenience and necessity require the establishment of the proposed motor line and absent, as here, the facts from which the presumption created by Section 5278, Revised Statutes 1929, arises, the burden is on the applicant to prove that the operation of the proposed motor bus line 'is necessary for public convenience.' [State ex rel. Henson v. Brown, 326 Mo. 230, 31 S. W. (2d) 208.] While all orders of the Commission are subject to judicial review (Sec. 5234, R. S. 1920) the court is confined upon review to a determination of whether, under the facts as found by it such order is reasonable and lawful. If the reviewing court finds the order both reasonable and lawful its duty is to affirm it. If the order be found to be 'either unreasonable or unlawful' it should be set aside. [State ex rel. Detroit-Chicago Motor Bus Company v. Public Service Commission, *supra*; State ex rel. Missouri Pacific Railroad Company v. Public Service Commission (Mo.), 327 Mo. 249, 37 S. W. (2d) 576.] 'In determining whether or not a certificate of convenience and necessity should be issued' the Commission is required by statute (Section 5267, R. S. 1929) to 'give reasonable consideration to the transportation service being furnished' by other carriers and 'the effect' which the proposed service may have on other existing forms of transportation service.''

Under all points specified in appellant's brief, there are copious citations of authority. We conclude that a review of this case based upon the above quotation will not be in conflict with any case cited and, therefore, will not burden this opinion with any extensive comment of same.

After an examination of the record before us, we are impressed with the accuracy of the statement of facts in evidence that appear in the report of the Commission. Said findings we conclude are favorably stated in behalf of the appellant.

We quote pertinent statements of facts and conclusions of the Commission that are called to our attention in appellant's brief as follows:

"No question in the case is made of the financial responsibility nor of the sufficiency and adequacy of the service rendered by any of these three bus systems.

. . . . . . .

"The testimony offered by the protestant, Interstate Transit Lines, tends to prove that it is now offering adequate and sufficient bus service between the points of St. Joseph, Kansas City and Parkville, and that no public convenience and necessity would be subserved by granting the authority sought.

. . . . . . .

"No question is made but that the service is efficient, and protestant's testimony is that it has always furnished adequate service; that no passengers have been required to stand and that it is amply able to furnish additional service if needed. . . . Not only is the Burlington road itself offering through transportation by five train movements between Kansas City and St. Joseph but there is also available to the public several rail and bus operations over the lines of the Missouri Pacific Railroad Company, the Missouri Pacific Transportation Company, and The Chicago, Great Western Railway Company."

If the interests of appellant and respondent alone involved in the matters before us for review were at stake the above stated facts would impel a favorable finding for appellant. We have above stated that when the rights of the public becomes involved that the rights of individuals must be subservient thereto. On this subject the report of the commission makes comment of vital import as follows:

"In the exercise of its discretion it is apparent that decisions in other cases dependent upon different facts are of little aid to the Commission except insofar as they suffice to direct the Commission's attention to features which have been deemed worthy of consideration in cases of this kind. Our decisions in reference to granting or refusing certificates of convenience and necessity are in contrast with those of courts. When a litigant adduces facts which bring his case within a settled principle of law the court is in duty bound to grant him a judgment. With us, however, it is manifest that we must at one time grant and at another time refuse a certificate upon states of facts which, so far as the parties before us are concerned, seem identical. This is because in every case we are required to act in conformity with the general public interest as distinguished from the interest of the parties who are actually before us. This general interest has a different aspect at different times; it varies with different places; it takes into account the condition of the transportation service in the State as a whole; it is concerned with the development of a harmonious, unified and dependable system of transportation. In short, we are charged with the exercise of a sound but not arbitrary discretion which prevents us from considering any case as an exact precedent for any other case."

We conclude that the scope of the Commissioner's power to act, as expressed above, does not transcend the powers that have been conferred on that body.

There is testimony in the record in this case to the effect that necessity for respondent's service, as asked, is evidenced by conditions existing in respect to shippers of stock to St. Joseph Stock Yards, for transportation to and from certain fishing resorts, for transportation to and from Weston—Missouri Tobacco Market, and

for persons coming into St. Joseph upon interstate lines. True it is that conflicting testimony as to such necessity appears in the record, and there are many divergent opinions directed to the necessity of such transportation in respect to conditions at Parkville, Missouri.

The powers of the Commission are so definite in regard to determining matters of public convenience and necessity that courts refuse to disturb the findings of the commission where there is testimony sufficient to support conclusions that are neither unreasonable or unlawful. The enactment of the Public Commission Law of this State had its inception in the fact that a well equipped Commission would have better opportunity to determine as to matters for which it was created than would the Judiciary. We can but conclude from the record before us that the findings and conclusions reached in the matters herein are not such as we can declare same to be unreasonable or unlawful.

When we come to a consideration of the other points specified in the appellant's brief, we find same are so closely involved that same have been principally passed upon in our review of point No. 1. We, therefore, find that we are somewhat in the situation of the writer who was unable to complete his novel because the hero got so mean in the first chapter that he had to kill him.

To an understanding of the situation we include said other points herein as follows:

## "II.

"Public convenience and necessity justifying an extension of the applicant's pre-existing certificate cannot be predicated upon the alleged advantages of through service.

## "III.

"Applicant Burlington Transportation Company has no right of priority in motor bus operation based upon the Burlington Railroad's established railway service.

## "IV.

"The Public Service Commission may not lawfully authorize additional motor carrier operation between points or over highways already adequately served.

"Possible future need will not justify granting authority to invade territory already well served.

## "V.

"Proof of conveniences and necessity justifying service to points not already served could not empower the Commission to authorize additional service between points already adequately served.

## "VI.

"The Commission may not lawfully grant a new certificate or extension of certificate over a certificated route unless and until the Commission has given the established carrier reasonable notice and opportunity to remedy and satisfy any inconvenience, inefficiency or insufficiency of service.

## "VII.

"The Commission overestimated its authority and jurisdiction and denied all restraints imposed upon it by statute and the decisions of the Supreme Court of Missouri.

## "VIII.

"The Commission's action in considering the application and in granting Burlington Transportation Company the authority it sought was premature."

All of above points state undisputed propositions that are supported by copious citations. We have above quoted from the opinion in Alton Transportation Co. v. Public Service Com., *supra,* and finding nothing conflicting therewith in other citations, we deem it unnecessary to take up and discuss the long list of other cases cited. In taking this course, we have in mind that the case at bar comes clearly under conditions wherein individual interests are declared to be subservient to the public interest.

There is a phase of this case not clearly present in our review above that is somewhat novel and we would be amiss in not discussing it. We refer to the matter of detour by respondent over highways occupied by appellant. Appellant challenges the "good faith" of respondent, touching the matter of inducing the commission to grant it a certificate of public convenience and necessity over a nonexistent highway. The matter of detour is incident to the above state of fact. There is indeed a novelty in such situation. The commission in its report, *supra,* makes explanation concerning the situation that the detour order is but a temporary grant and as this court holds that the granting of the certificate in other respects comes within the limit of the discretionary powers of the commission, we feel that it would be straining our judicial power to set aside the orders of the commission upon the ground that the detour, under the facts presented, is unreasonable and unlawful.

In fact, even as a layman, we might justify the act of the Commission upon a consideration of "faith" alone without a consideration of good or bad. Faith is defined in that Book of Books from which doctrinarians evolve conflicting creeds, still a classic in literature and philosophy that extends beyond the boundaries of this vale of tears, as follows, to-wit: "Faith is the substance of things

hoped for, the evidence of things not seen.'' [Hebrews, chap. 11, verse 1.]

As we glean from the record the hiatus in highway No. 45 has encouraging prospects of elimination and rights of detour would thereby be terminated. Such, at least, may afford consolation to appellant. Faith and time solve many problems. Under the situation as presented in the record, we can but admonish the appellant to have faith. Judgment affirmed. All concur.