STATE of Missouri ex rel. MISSOURI PA-
CIFIC FREIGHT TRANSPORT
COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION of Mis-
souri, Farmington Transfer Company, Inc.,
C.E.S. Truck Lines, Inc., Byers Transpor-
tation, Inc., Smock Transportation Co.,
Inc., L. A. Tucker Truck Lines, Inc., Sand-
ers Truck Line, Orscheln Bros. Truck
Lines, Inc., St. Louis-Washington & Union
Express, Scherff's Truck Line, Powell
Bros. Truck Lines, Inc., Philipp Transit
Lines, Inc., John Renz Company, Scheer
Transfer Company, Fischer Transfer Com-
pany, Inc., Campbell Sixty-Six Express,
Inc., Nelson-Hayes Truck Line, Schien
Truck Lines, Inc., Respondents.

No. 22355.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1956.

George W. Holmes, Harold L. Harvey, St. Louis, for appellant.

Glenn D. Evans, Frank J. Iuen, Jefferson City, for respondents.

SPERRY, Commissioner.

This is an appeal by Missouri Pacific Transport Company, relator, from a judgment affirming an award by the Missouri Public Service Commission denying the transportation company's request that its authority to operate motor freight carriers over certain routes be modified and enlarged in accordance with relator's application.

Between 1936 and 1941, the Missouri Pacific Railroad Company, hereafter referred to as Railroad, applied for and received certificates to operate motor carriers of freight over the routes here involved. The specific authority requested and granted was that the Railroad might use trucks in transporting freight along its route, from depot to depot. The authority was limited to picking up freight, in motor trucks, at its depots, and moving it to other depots. The service was strictly auxiliary to that of its train operation. No authority was granted to pick up freight at consignor's dock, or to deliver same to consignee's dock. Freight was to be collected by local draymen and delivered to the depot, there to be loaded onto truck; and freight delivered by the Railroad's trucks to the depot was to be picked up by local draymen and delivered to consignee. This was the procedure followed by the Railroad during the time it held the certificates here involved.

However, in 1952, the Railroad filed application before the Commission to have its certificated authority amended and broadened so as to permit its over-the-road trucks to pick up freight at the docks of its consignors, instead of at its depots, and to deliver freight directly to the docks of consignees. A hearing was had. Motor carriers who held certificates authorizing service at the towns involved, appeared and protested. The Commission denied the application. No further proceedings were had in connection with that action.

Sometime thereafter, the Railroad transferred its ownership of these certificates to the relator, a corporation wholly owned by, and subsidiary to, the Railroad.

In the application here involved, filed by the present owner of said certificates, it is sought to have the authority therein granted broadened so as to permit applicant to pick up from and deliver freight directly to its customers, in its over-the-road trucks, thereby abandoning entirely the use of railroad depots insofar as motor carried freight is concerned.

At the hearing before the Commission the question of whether or not relator would be required to prove public convenience and necessity, in order to be entitled to the relief it requested, was discussed. The Commission announced that such proof would be required. Relator produced more than twenty witnesses who gave testimony on that issue. Protestants also offered evidence on the point. There

was evidence to the effect that adequate service, of the type proposed, is now being rendered by other carriers, to all except two towns involved; and that if relator should be granted the authority requested it would have an adverse financial effect on carriers now in the field. See Section 390.-060 RSMo 1949, V.A.M.S.; State ex rel. Byers Transp. Co., Inc., v. Public Service Commission, Mo.App., 246 S.W.2d 825, 827. The Commission denied the application (as to all towns named therein except-ing two) on the grounds that relator failed to prove public convenience and necessity. There was sufficient substantial and com-petent evidence to support that finding. State ex rel. Rice v. Public Service Com-mission, 359 Mo. 109, 220 S.W.2d 61, 64.

However, relator now contends that it is entitled to have the authority sought grant-ed because convenience and necessity need not be proved in this case; that relator already has authority to carry freight by motor along the routes mentioned in the application; and that it needs no additional authority to permit it to pick up and deliver, from its over-the-road trucks, at the docks of shippers and consignees. It contends that such authority is inherent in the au-thority originally granted to its assignor, the Railroad. It has not set out in its "statement" any of the testimony relating to the subject of convenience and necessity, claiming that it is not an issue.

The Commission concedes that such au-thority as is here sought may be granted to rail carriers, and that it could have been granted to relator's assignor, upon proof of convenience and necessity, under Sections 388.270 and 390.050 RSMo 1949, V.A.M.S. The Commission also concedes that many rail carriers have received such authority, and now operate "all out" motor freight service, with full authority to pick up and deliver freight, the type of service applicant seeks authority to render. But the Com-mission contends that such "all out" service can be authorized only after proof of public convenience and necessity *for that type of service.*

The record indicates that relator's as-signor specifically limited its request, orig-inally, to such service as would be auxiliary to its rail service, as heretofore indicated; and that it was granted the limited authority it then requested, upon proof of public con-venience and necessity *as to that service.* Many years after receiving such limited authority, the Railroad sought to have that authority extended so as to permit it to render "all out" motor carrier service; but its application was denied. It took no ap-peal. Thereafter, it assigned its certificates to relator.

The precise question presented has not been ruled by our appellate courts. There appears to be substantial competent evi-dence tending to prove that the territory and towns here involved are now receiving satisfactory service of the type sought to be rendered by relator, by qualified, cer-tificated carriers; that various carriers in the field, now serving the towns involved, would suffer financially if relator should be authorized to render identical service. Had relator's assignor originally requested the authority it now seeks, it might, or it might not have been found to be in the public interest to grant it. But it did not seek that authority. It, specifically, sought the authority that it was given. It did not seek to prove, at that time, public convenience and necessity for the type of service it now seeks.

It appears that it was always the theory of the Commission that it is author-ized to grant two types of certificate to rail carriers applying for authority to operate trucks. The Commission's policy has been to grant, in some cases, limited authority and, in others, "all out" authority. Many railroads have received certificates author-izing limited motor carrier service, auxil-iary to its rail service, others have received "all out" certificates, and some hold both types. But the Commission's uniform pol-icy has been to require proof of public con-venience and necessity for the specific type of service sought by an applicant. It ap-pears that, heretofore, applicants for cer-

tificates, as well as those protesting issuance thereof, have, by their course of conduct, tacitly approved of the Commission's authority and power to follow the policy it has followed. While such an interpretation of authority, by the Commission and by carriers, is not binding on the courts, nevertheless it is persuasive of the correctness of the procedure and practice followed.

 We are unable to say what effect the granting of authority to relator's predecessor to render pickup and delivery service would have had, some fifteen to twenty years ago, on other carriers in the field. That question was not considered by that Commission at that time. We cannot say that it is immaterial at this time. The Commission refused to find that public convenience and necessity was established in the instant case. There was evidence to the effect that adequate service is now being rendered and that relator's entry into the field would reduce the income of those now rendering the service to the point where it would seriously cripple their operations. While priority in the field is not conclusive evidence that another certificate should not be granted, it is an element to be considered. State ex rel. Missouri, Kansas & Oklahoma Coach Lines v. Public Service Commission, 238 Mo.App. 317, 179 S.W.2d 132; State ex rel. Interstate Transit Lines v. Public Service Commission, 234 Mo.App. 554, 132 S.W. 2d 1082. The rights of an individual with respect to issuance of a certificate are subservient to the rights of the public. See cases last cited. The dominant purpose in creation of the Commission is public welfare. State ex rel. and to use of Alton R. Co. v. Public Service Commission, Mo.App., 110 S.W.2d 1121, 1125. The administration of its authority should be directed to that purpose. In every case where it is called upon to grant a permit, or to authorize an additional service to be rendered by an authorized certificate holder, the Commission should be guided, primarily, by considerations of public interest. Consequently, the question of public convenience and necessity was of prime importance in this case.

 Relator contends that the order is unlawful because of the provisions of Sec-

tion 390.030 subd. 9, MoRSSupp.1953, V.A. M.S. which, it claims, exempts from the Commission's regulation pickup and delivery service "within a commercial zone." There is no showing that the operations here involved are "within a commercial zone."

Complaint is made that the order purports to cover operations in southeast Missouri. The record discloses that the sole operation of relator here considered was that in southwest Missouri. The order made in the instant case has no effect on relator's southeast Missouri operations.

The award should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The award is affirmed.

All concur.