STATE of Missouri ex rel. MISSOURI PACIFIC FREIGHT TRANSPORT COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION OF MISSOURI, C. E. S. Truck Lines, and L. A. Tucker Truck Lines, Inc., Respondents.

No. 22774.

Kansas City Court of Appeals.

Missouri.

April 7, 1958.

. Morris E. Osburn, Jefferson City, Harold L. Harvey, St. Louis, for appellant.

· Glenn D. Evans and Howard L. McFadden, Jefferson City, for respondent·Public Service Commission.

La Tourette & Rebman, St. Louis, Gregory M. Rebman, St. Louis, of counsel, for respondents C. E. S. Truck Lines and L. A. Tucker Truck Lines, Inc.

· CAVE, Judge.

This is an appeal by the Missouri Pacific Freight Transport Company from a judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission, hereafter called the commission. No issue is in dispute which is within the exclusive jurisdiction of the supreme court and this court has jurisdiction. Sec-

tions 3 and 13, Article V, Constitution 1945, V.A.M.S.

In 1950, the commission issued certificates of convenience and necessity to the Missouri Pacific Railroad Company for the transportation of property by truck over certain designated routes in eastern Missouri, the principal termini being St. Louis; Jefferson City; Poplar Bluff; Charleston; and certain designated towns between those points, all on the railroad lines. Later, with the approval of the commission, these certificates were transferred to appellant, which is a wholly owned subsidiary of the railroad company.

In 1956, the commission cited the appellant to appear and show why its certificates should not be revoked, altered or amended, because, it was charged, the appellant had been operating in excess of the authority granted by the certificates; in that it had been delivering property by truck directly to consignees in various towns on the specified routes. The appellant, in its return, admitted that it had delivered property direct to a consignee, and contended it had the right to do so under the authority granted by the certificates. A hearing was held and the commission ordered appellant to cease and desist such practices. Appeal was taken to the Circuit Court of Cole County, and that order was affirmed, and appeal was perfected to this court.

The certificates contained certain conditions or limitations on the authority of the appellant to transport property by truck, and it is these conditions that give rise to this controversy. The material conditions are: "The service by motor vehicle to be performed by said carrier shall be limited to service which is auxiliary to or supplemental of its railroad service or railway express service. *Said carrier shall not serve any point not a station on its rail lines*". (Italics supplied.)

Appellant contends that these limitations mean that its truck service shall be confined to rail traffic, and that it *may not serve any community not* on the railroad lines, but

that it may pick up property from a consignor and deliver the same to a consignee in any town on the railroad lines. The commission contends, and so found, that the word "station" is synonymous with the word "depot"; and that the appellant is limited to transportation of property from *depot to depot* or *station to station* on the rail lines.

On appeal the appellant contends that the commission unlawfully and unreasonably construed the meaning and purpose of said conditions. It has been held that the commission may interpret its own orders, and ascribe thereto a proper meaning, and in doing so it does not act judicially, but as a fact finding agency. State ex rel. Orscheln Brothers Truck Lines v. Public Service Commission, 232 Mo.App. 605, 110 S.W.2d 364, 366.

At the hearing on the instant citation, there was considerable evidence introduced, mostly documentary, and the commission made a detailed findings of fact as the basis for its conclusion that the appellant had violated the authority granted. It referred to certain allegations in the original application by the railroad for the certificates, that " * * * there will be no actual competition between applicant and other motor carriers except insofar as such competition already exists between applicant's rail line and such other motor carriers, and there should not result therefrom any adverse effect upon such other carriers. * * Applicant proposes to serve only locations reached by the Missouri Pacific Railroad Company, the principal towns of which are set out above". The commission also referred to certain testimony of Mr. Fink, General Manager of the Railroad Company, at the hearing of the original application.

He was asked:

"Presently how are you handling the l.c.l. traffic along the routes included in the application here before the commission? ·A. Presently l.c.l. traffic is handled in box cars to and from the points mentioned in the application by local way–freight trains.

* * * The territory between St. Louis and Jefferson City, all freight will be afforded delivery *at the stations* prior to 8 a. m. as compared to present early morning to late afternoon and in some instances, second morning. * * *'

"Q. What is the physical difference in the handling, speaking now of the actual physical handling of the freight, from St. Louis to Jefferson City? A. The physical handling of the freight is, we would take it from *station to station* where we maintain our own facilities and the shipments would be picked up and delivered by our delivery contract at the point served, with the exception, of course, there are a few stations where we do not have pickup and delivery. * * *

"Q. Isn't it true, if you get a shipment of 10,000 pounds going to some consignee at Jefferson City, for example, that you will make direct delivery from the truck at the store door of that consignee? A. No, sir, that is not correct". There is other testimony of similar import, but it need not be set out.

There was also introduced certain prior orders and certificates issued to the railroad company for similar service for what is referred to as the *western Missouri* territory.

From all the evidence, the following finding was made: "The commission is of the opinion that the facts as presented sustain the position of the commission that the authority sought by the applicant and granted by the commission was the rendition of service by motor vehicles between stations; that 'station' is used synonymously with 'depot'; and that there is nothing in the order to sustain the position of respondent (appellant) that the word 'station' means 'town', or that the authority granted respondent (appellant) permission to use its road haul vehicles in making door-to-door pickups and deliveries of freight. Such construction would result in a direct truck operation at rail rates and, in the opinion of the commission, would be unfair ·

competition with motor carriers who protested the original application and who are operating under truck rates fixed by the commission". This finding was followed by an order that the appellant cease and desist making door-to-door pickups and deliveries at points other than at its "stations" or "depots" in the towns through which it operates.

However, the appellant points out that prior to the time the commission issued the original certificates, the Interstate Commerce Commission had issued to the railroad certificates for *interstate shipments* to the same towns designated in the application for authority of *intrastate shipments*; that the I. C. C. certificates contained the same conditions and limitations set out in the present certificates, and that the commission, in its order, stated: "We are of the opinion that the authority we grant, for the purpose of uniformity and operating convenience, should be identical with that granted by the Interstate Commerce Commission—therefore, the authority we grant will be identical with that granted by the federal commission * * *"; that the I. C. C. has *never* construed these conditions to limit the transportation of *interstate shipments* from *station to station* or *depot to depot*, but that such conditions permit shipment from town to town, or door to door delivery; and that when the Missouri commission adopted the identical conditions, it is presumed to have adopted the construction previously put on the same by the I. C. C.

The only decision of the I. C. C., cited in support of such construction is Texas & Pacific Motor Transport Company, Common Carrier Application, Vol. 41, page 721, I. C. C. Reports, Motor Carrier Cases. In that case, the applicant was a subsidiary of the railroad and the conditions in the certificate are identical with those in appellant's certificates. The principal question discussed relates to the matter of tariff for shipment of property solely by truck or partly by truck and partly by rail. However, in discussing these conditions, it is

said (725): "There was no need for another motor carrier to furnish service such as that supplied by existing motor carriers which have no close relation to the operations of the railway. Accordingly, petitioner was granted certificates subject to conditions which were imposed for the purpose of so limiting its service as to prevent it from engaging in motor-vehicle operations unconnected with any rail service. * * * Condition 1 limits the character of service to be performed by the petitioner to that which is auxiliary to or supplemental of the rail service of the railway. It limits the service to be performed by truck to the transportation of the rail traffic of the railway. * * * Petitioner's status as a common carrier by motor vehicle is not dependent upon its having direct dealings with the shipping public. * * * Its service is necessarily limited to points served by the railway, * * *. * * * the petitioner is engaging in operation as a common carrier by motor vehicle performing the same kind and character of service as is performed by motor common carriers generally. * * * This service is the same as the service rendered by a motor carrier which is not performing a service auxiliary to, or supplemental of, rail service, * * *. If petitioner desires authority to perform an unrestricted motor vehicle service over the routes and between the points for which it now holds limited certificates to the extent indicated above, the proper procedure is to file a petition for further hearing on its application * * *". After careful consideration of this ruling of the I. C. C., we do not understand it to hold that the railroad trucking company was authorized to render door-to-door service. The commission did not discuss or define the word "station". It merely said that applicant's "service is necessarily limited to *points* (towns) served by the railway"; but did not define the manner of such service, whether from *station to station* or *door-to-door*. It is the scope of service that is in dispute in the instant case; that is, whether delivery be made at a consignee's door or at the railroad *station*.

In aid of its asserted construction of the I. C. C. ruling, appellant offered its Exhibit "B", which was excluded by the commission. This exhibit is an affidavit by W. Y. Blanning, Director of the Bureau of Motor Carriers of the Interstate Commerce Commission. It stated that Blanning was familiar with appellant's interstate certificates and the conditions contained therein, and that he "is charged with the responsibility of policing the interstate operations of motor carriers in Missouri and elsewhere, and states that the foregoing restrictions have never been construed by * * * the Interstate Commerce Comission as prohibiting Missouri Pacific Freight Transport Company, or any other motor carrier operating under like restrictions, from picking up and delivering freight at the door of the consignor or consignee with over-the-road trucks. Restrictions such as the foregoing have commonly been imposed in certificates granted to motor carriers affiliated with the railroads for many years prior to 1949 and have never been construed as prohibiting store-door pickup and delivery of freight with over-the-road vehicles".

Appellant contends that the commission erred in excluding this affidavit. We think not, for several reasons. There was no showing that Mr. Blanning had any right or authority to speak for the I. C. C. or to interpret its policy, if any, on the subject. Also, the affidavit merely stated that the I. C. C. had *never* construed the conditions in a certain way; it did not say that the I. C. C. *had* construed the conditions to mean certain things. If it had, such order of the commission would be the proper method of proving such construction; not some employee's interpretation thereof. No such order was offered.

In construing the authority granted appellant, the commission also considered its other grants of similar authority and the purposes and policy for the same. It quoted from its opinion in Case No. T–11, 304, as follows: "The service rendered by motor carriers, while competitive with rail

operations, is not identical with rail service and each type of service complements the other. There is good reason for the maintenance of the competitive relationship between rail and motor carrier operations, and one should not be permitted to invade the field of the other absent convincing proof that the public convenience and necessity requires it. * * * All of these restrictions were imposed after careful deliberation, and none should be removed unless good cause is clearly shown. In our opinion, the removal of the above described restriction will create for all practical purposes a new service, and it will put this carrier in the business of a common carrier by motor vehicle. It will result in one company conducting dual operations, viz., rail and truck service, and it will make the applicant more competitive with the service of other motor carriers. This competition will be further intensified by the fact that the rates applied to shipments handled by applicant are rail rates, and generally they are lower than the motor carrier rates prescribed by this commission".

■ This statement presents the theory and policy of the commission in granting certificates to a railroad to transport certain kind of property (less than carload lots) by truck. The commission chose to use certain words to express the limitation of authority, and we cannot hold that it has unlawfully interpreted the meaning thereof unless it appears, as a matter of law, that the words have only the meaning contended for by appellant. This we are unwilling to do.

■ We are of the opinion that the commission is supported by the record in construing the conditions as limiting the appellant to the transportation of property from *station to station* or *depot to depot* on its rail lines.

■ Webster's New International Dictionary, Second Edition, gives several definitions of "station", among which are "a

regular stopping place in a stage, omnibus or railroad route for the convenience of passengers, moving freight, etc.; also the building or buildings connected with such a stopping place; a depot". Black's Law Dictionary, Third Edition, defines "station" as a place "that which both freight and passengers are received for transportation and delivery after transportation". It is generally understood that, in connection with railroads, the words "station" and "depot" are synonymous. In fact, the commission has so used the words. See In re Thompson, trustee, Missouri Pacific Railroad Co., 23 P.S.C. 38, 46, where it is said, "the applicant will only be permitted to receive and discharge property at its regular established *depots* or *stations* at each of the aforementioned points". (Italics supplied.)

A somewhat analogous question was decided by this court in State ex rel. Missouri Pacific Freight Transport Co. v. Public Service Commission, Mo.App., 288 S.W.2d 679. This same appellant held certificates authorizing it to transport property by truck along its rail lines in its "Western Missouri territory", that is, from Jefferson City to Kansas City, and from there to towns on its rail lines in west and southwest Missouri. It is true those certificates more specifically limited the appellant to transport property from "depot to depot" on its rail lines; instead of to "stations". We held that under those circumstances the appellant was limited to transport property from one *depot* to another *depot*, and that such authority could not be enlarged unless there was proof of public necessity and convenience for the change. We transferred the cause to the supreme court, and that court reached the same conclusion. See State ex rel. Missouri Pac. Freight Transport Co. v. Public Service Commission, Mo., 295 S.W.2d 128.

While the wording in the "Western Missouri" certificates is somewhat different from that used in the "Eastern Missouri" certificates (the ones in dispute on this appeal), we do not believe that the underlying policy and the purposes to be served

are different. Probably more specific language would remove any doubt as to the authority granted, but we must take the situation as it is.

From what we have said, the judgment should be affirmed. It is so ordered.

All concur.