DUNLAP *et al. v.* DIXIE GREYHOUND LINES, INC., *et al.*

(*Nashville,* December Term, 1941.)

Opinion filed April 4, 1942.

Lon P. MacFarland, of Lebanon, Thos. H. Peebles, Jr., of Columbia, Leon Jourolmon, Jr., of Knoxville, Albert Williams and Joe Brown Cummings, both of Nashville, and W. A. Roberts, of Washington, D. C., for appellants.

Charles C. Trabue, of Nashville, and A. L. Heiskell, of Memphis, for appellee.

Mr. Justice DeHaven delivered the opinion of the Court.

Upon application in due form, the Railroad and Public Utilities Commission of Tennessee granted to the Tri-State Transit Company of Louisiana, a motor bus carrier, a certificate of convenience and necessity authorizing it to extend its route from Jackson, Tennessee, via Bolivar, to Memphis, Tennessee. The application was protested by Dixie Greyhound Lines, Inc., and W. H. McNeely, doing business as Shorty's Bus Line. On *certiorari* granted by the Chancery Court of Davidson County, the chancellor held the order of the Commission granting the certificate aforesaid void because not supported by material evidence. The Tri-State Transit Company has appealed to this court and assigned errors. The Commission found in its order that Dixie Greyhound Lines, Inc., operates between Memphis, Tennessee, and Jackson, Tennessee, over State Highway No. 1, U. S., 70, and between Memphis and Bolivar, Tennessee, over State Highway No. 15, U. S., 64, by virtue of certificate of convenience and necessity issued by the Commission; that W. H. McNeely, doing business as Shorty's Bus Line, operates between Bolivar and Jackson on State Highways Nos. 18 and 5 by virtue of a certificate of con-

venience and necessity issued by the Commission and that by interchange at Bolivar "over exactly the same route as set out in the instant application. However, the real purpose of the instant application is to open up a gap in the operations of the applicant in connection with through service between its extreme termini and enable it to render a faster and more efficient service and this can be done by placing closed door restrictions on the route applied for without offering serious competition to the present carriers who are protesting the application." The Commission further found as follows:

"The record in this cause shows that the applicant is the operator of extensive interstate passenger lines south of Memphis connecting in Memphis as a southern gateway. This gateway is a metropolitan center with a population of 350,000, which requires adequate transportation service to all parts of the country. The applicant is likewise the owner of operating rights from Jackson northwards into and across Kentucky and to St. Louis, Missouri, and other points. Jackson and numerous other small cities in upper Western Tennessee likewise have substantial populations with an existing and growing need for more adequate transportation service. The gap between Memphis and Jackson is at present unserved by the company, and this constitutes a bottleneck which impedes the flow of commerce between the northern and southern parts of this system owned by the applicant.

"The convenience of the traveling public would be greatly served by enabling the company to connect up the two parts of its service by use of operating rights over the route set out in the application.

"It is the considered opinion of the Commission upon the entire record submitted in this case that the applicant,

Tri-State Transit Company of Louisiana, Inc., sustained the burden of showing that public convenience and necessity requires granting of operating rights to the applicant for service over the routes set out and carriage of passengers between Memphis and Jackson and points north thereof, and between Jackson and Memphis and intrastate points south thereof. Accordingly, the Commission will issue a certificate of convenience and necessity to the applicant authorizing the transportation of persons over the route applied for, but the same is to be limited and restricted to a closed door operation and no authority is conferred to render local service between any of the points set out in the application except Jackson and Memphis.

"Chairman Dunlap authorizes us to state that he is unable to concur in the opinion and order of the Commission in this cause."

The certificate of convenience and necessity was granted to the applicant, as appears from the face of the order, "Upon consideration of the application, the evidence adduced at the hearing and the matters and things pertaining thereto." A number of witnesses testified before the Commission on behalf of the applicant. Other witnesses testified on behalf of the protestants. Upon the conflicting evidence thus adduced, the Commission found the issues in favor of the applicant.

The great weight of authority is that although courts are empowered to review the orders of public service commissions granting or denying certificates of convenience and necessity, the courts cannot substitute their judgment for that of the Commission. *Railroad Commission* v. *Rowan & Nichols Oil Co.,* 310 U. S., 573, 60 S. Ct., 1021, 84 L. Ed., 1368; *Fulmer* v. *Board of Railroad*

538

*Com'rs,* 96 Mont., 22, 28 P. (2d), 849; *Pennsylvania Grey-hound Lines* v. *Public Service Commission,* 217 Ind., 221, 27 N. E. (2d), 348; *A. & T. Motor Freight* v. *Public Utilities Commission,* 125 Ohio St., 617, 184 N. E., 11, and other cases to like effect.

When the Commission has proceeded regularly within its jurisdiction, the courts will refuse to disturb its findings where there is material evidence to support conclusions that are neither arbitrary nor unlawful. As was well said in *State* v. *Public Service Commission,* 234 Mo. App., 554, 132 S. W. (2d), 1082, 1087: "The powers of the commission are so definite in regard to determining matters of public convenience and necessity that courts refuse to disturb the findings of the commission where there is testimony sufficient to support conclusions that are neither unreasonable or unlawful. The enactment of the public commission law of this state had its inception in the fact that a well equipped commission would have better opportunity to determine as to matters for which it was created than would the Judiciary."

In *United States* v. *Morgan,* 313 U. S., 409, 61 S. Ct., 999, 1005, 85 L. Ed., 1429, it was said: "It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other."

Chapter 119, Public Acts 1933, Michie's 1938 Code, sections 5501(1) et seq., by section 5(a) thereof provides, in part, as follows:

"In determining whether or not a certificate of convenience and necessity should be issued, the commission shall give reasonable consideration to the transportation

service being furnished by any railroad, street railroad or motor carrier on the route or in the territory in which the applicant proposes to operate, the service to be rendered and/or capable of being rendered by the applicant, the financial condition and character of the applicant, the character of the highways over which said applicant proposes to operate and the effect thereon and upon the traveling public using said highways, the public demand or need for the service proposed, the likelihood of the proposed service being permanent and continuous, the effect which such proposed transportation service may have upon other transportation service being rendered, and all other pertinent facts.''

By section 5(b) of the Act it is provided, among other things, that:

''In determining whether or not a permit should be issued, the commission shall give reasonable consideration to the nature of the highways over which the permit is applied for, to the effect of such operation thereon and upon the traveling public using said highway; and to the nature and character and probable condition of the vehicles to be used on said highway.''

■■ The evidence shows that the Tri-State Transit Company is a Louisiana corporation, domesticated in Tennessee, operating in nine states; that at the time of the hearing, it operated a bus system which served Memphis, Tennessee, and various points in the states of Mississippi, Louisiana and Arkansas; that it also owned and operated a bus system which served Jackson, Tennessee, and a number of small cities in upper West Tennessee, having substantial populations, and across Kentucky to St. Louis, Missouri. A gap existed in the Tri-State bus service between Jackson and Memphis. The

purpose of the application in the instant case was to close this gap and thereby afford to the people north of Jackson, in territory served by the applicant, through bus service to Memphis, and from Memphis to the said territory north of Jackson. It is true that the Commission has no jurisdiction over interstate motor carriers, 49 U. S. C. A., sections 303-307, and has not sought in this case to exercise such jurisdiction; but in determining the question of the convenience and necessity of closing the gap referred to above the fact that the applicant operated bus lines from Memphis south to various points in other states, and that Memphis is served by five other bus carriers and by ten trunk line railroads, and by five air carriers, constituted material facts to be considered by the Commission in arriving at a decision on this application. It cannot be doubted that it is a necessary convenience to the population of the territory north of Jackson, served by the applicant, to be afforded bus transportation to the Memphis gateway without change of carriers and stations at Jackson. Not only so, but, as shown by the evidence, Memphis is an educational center, having the Memphis State College, Southwestern University, and the medical and certain other departments of the University of Tennessee. It is further shown in evidence that Memphis is a large hospital center. Also that it has many theatres and other places of amusement. The evidence shows that the Memphis State College has a student body of 1,100 drawn from a radius of 150 or 200 miles of Memphis; that around 75 students are enrolled residing in the territory north of Jackson, served by the applicant. No tuition fee is charged at the Memphis State College, except to students from out of the State. It is further shown in evidence

that Memphis has a population of about 350,000, having many industries, nineteen having been added in the year 1940, among these being the Tennessee Powder Company, which will have about 15,000 employees at the maximum. It is shown that in some of the larger plants it has been necessary to import labor from out of the city. It could have been reasonably inferred by the Commission that some of this labor would be drawn from upper West Tennessee.

The evidence shows that people living at points north of Jackson, in territory served by applicant, have occasion to go to Memphis from time to time for shopping, visiting hospitals, and amusement. Students residing within this territory, attending the Memphis State College, make more or less frequent trips to and from their homes to Memphis. Several of these students testified in the case and showed the inconvenience and delay incident to the present bus transportation. It is further shown that the territory referred to is within the Memphis trade area.

The Dixie Greyhound Lines operate seven daily schedules between Jackson and Memphis over highway No. 70, via Brownsville. Six of these schedules are through from Nashville to Jackson, over several different routes, and thence to Memphis. One schedule is local between Jackson and Memphis. The adequacy of the Dixie service between Jackson and Memphis is admitted. But, the Tri-State has no service between Jackson and Memphis. Passengers brought into Jackson by the Tri-State must transfer to the Dixie line, with consequent delay at Jackson, which will be completely avoided by the proposed schedule of the Tri-State between Jackson and Memphis, via Bolivar. Likewise, the proposed schedule

will give passengers from north of Jackson a longer period of time in Memphis before returning to their homes on the same day. The Tennessee Junior College is located at the town of Martin, one of the points served by Tri-State. This college has an enrollment of about 400 students, with an average over the year of some twelve or twenty students from Shelby County. The administrative head of this college testified that increased transportation facilities would result in increased attendance. The evidence shows that the Wolf Creek Ordnance Plant situated near Milan has created a heavy demand for labor. The Tri-State operates its busses past the Personnel Gate, as also does the Dixie.

On the question of the present bus service between Jackson and Memphis on the route applied for by the Tri-State, it appears that the route is approximately ten miles longer than the Dixie route over highway 70. Due to this fact and the poor connecting schedules between Shorty's Bus Line from Jackson to Bolivar and the Dixie from Memphis to Chattanooga and other points by way of Bolivar, bus traffic from Memphis to Jackson, over this route, is practically non-existent. Not one instance of a through ticket sale between Memphis and Jackson via Bolivar, over the connecting lines of Dixie and Shorty's Bus Line, is shown in the record.

The evidence shows that the Tri-State bus service between Jackson and the towns north is not profitable; but, with the closing of the gap between Jackson and Memphis, the same could be maintained and operated successfully with a profit. This was a material factor to be given consideration by the Commission. *State ex rel. Pitcairn* v. *Public Service Commission*, 232 Mo. App., 535, 111 S. W. (2d), 222; *Modern Transfer Co.* v. *Pennsyl-*

*vania Public Utility Commission,* 139 Pa. Super. 197, 12 A. (2d), 458, 461. As stated in the latter case, "the public are interested in obtaining not only an economical but a dependable service, and carriers cannot continue indefinitely to serve the public at a loss."

 That there exists a definite need for through bus service between the towns north of Jackson and Memphis, by way of Jackson and Bolivar, is established by material evidence. The Commission could well have concluded that the public convenience and necessity required the new service proposed by the Tri-State Transit Company.

 The evidence in the case fairly covers all of the factors set forth in section 5(a) and (b) of Chapter 119, Public Acts 1933. It must be assumed that the Commission gave "reasonable consideration" to these factors.

It is contended by protestants that a certificate of convenience and necessity may not be granted by the Commission where there is existing service in operation over the route applied for, unless the existing carrier has been given a reasonable opportunity to furnish such additional service as may be required. Reliance is placed on the second paragraph of section 10, Chapter 119, Public Acts 1933. This paragraph is as follows:

"The Commission may at any time, for good cause, suspend any certificate of convenience and necessity, interstate permit or contract haulers permit; and upon ten days' notice to the holder of any certificate of convenience and necessity, interstate permit or contract hauler's permit and after an opportunity to be heard, said Commission may for proper cause revoke, alter or amend any certificate of convenience and necessity, in-

544

terstate permit or contract hauler's permit issued under the provisions of this Act. Provided, that on finding of the Commission that any motor carriers operating between points within this State does not give convenient efficient service in accordance with the orders of the Commission, such motor carrier shall be given a reasonable time, not more than sixty days, to provide such service before any existing certificate is cancelled or revoked or a new certificate granted to some other motor carrier over the same route or routes.''

It is apparent that the above quoted paragraph of the Act has reference to and applies only to a motor carrier whose certificate is about to be cancelled, altered or amended, upon good and proper cause found by the Commission, after notice to the carrier and a hearing. The Commission, in the instant case, is not seeking to revoke, alter or amend any certificate held by protestants. Hence the second paragraph of section 10 is not pertinent to any issue in the case.

A regulated monopoly in the motor carrier field is not authorized by Chapter 119, Public Acts 1933. The highways of the State belong to the people of the State. Many of these highways have been improved at large cost to the taxpayers. It is the convenience and necessity of the people of the State that must be given predominant consideration by the Commission, and not that of contending motor carriers operating free over these highways. It is within the power of the Commission, in proper cases, to permit several motor carriers to operate over the same route. No one carrier, by virtue of a certificate, obtains a monopoly over the route granted.

In *Johnson Freight Lines, Inc.,* v. *Davis,* 174 Tenn., 51, 123 S. W. (2d), 820, 821, the court said, *inter alia*:

"The certificates of convenience and necessity granted to the complainants expressed no exclusive authority and conferred no exclusive franchise for the operation of truck lines over the highways of the State. Such certificates did not protect the complainants from lawful competition."

Several states, either by statute or judicial holding, are committed to the rule of regulated monopoly in the motor carrier field, but not Tennessee.

Upon consideration of the whole record and the questions raised, we are constrained to reverse the decree of the chancellor and affirm the order of the Commission. The appellees will pay the costs of the cause incurred in this court and in the chancery court.