# TENNESSEE CENT. RY. CO. v. PHARR et al.—198 S. W. (2d) 289.

Middle Section. August 31, 1946.

Petition for Certiorari denied by Supreme Court, December 7, 1946.

532

534

Armistead, Waller, Davis & Lansden, of Nashville, for plaintiff in error.

Jordon Stokes, III, of Nashville, for Fletcher and Wilson.

Leon Jourolman, Jr., and Frank Clements, both of Nashville, for the Commission.

HICKERSON, J. On September 22, 1944, John D. Fletcher and Felix Z. Wilson filed a petition against Tennessee Central Railway Company with the Railroad and Public Utilities Commission of Tennessee (referred to as Commission in this opinion) in which they sought a decrease in the rate for shipping coal from Monterey, Tennessee, to Nashville, Tennessee. They charged that the prevailing rate of $1.45 a ton for shipping coal from Monterey to Nashville was "excessive and unreasonable," and that other cities enjoyed a more favorable freight rate on coal than Nashville, which caused an unjust discrimination against Nashville. It was alleged that a rate of $1.00 a ton for coal shipped from Monterey to Nashville would be a reasonable compensation to the carrier.

Tennessee Central Railway Company, the only carrier moving coal from Monterey to Nashville, by answer denied the material allegations of the petition. It further alleged that Monterey, Tennessee, and Wilder, Tennessee, were located in the same rate group; and that Wilder was one hundred thirty miles from Nashville, while Monterey was one hundred nine miles from Nashville. The defense was made that for the Monterey-Wilder group, taken as a group, the rate of $1.45 a ton for coal shipped to Nashville was just and reasonable.

Several carriers filed intervening petitions in the cause, and a hearing was had before the Commission where the parties to the original petition, and all intervenors, were given the opportunity of proving any fact which was material to the issues.

The Commission ordered: "That a rail rate of $1.30 per ton to be, and the same is hereby fixed as a maximum rate on coal moving from the Monterey group referred to above to Nashville, Tennessee, and intermediate points."

By petition for certiorari and supersedeas, Tennessee Central Railway Company took the case to the Circuit Court of Davidson County to review the order of the Commission. Code Sections 9008-9018.

The case was heard in the Circuit Court upon the record made before the Commission, no additional proof being offered. The Circuit Court dismissed the petition for certiorari and supersedeas, and by this judgment the order of the Commission was affirmed.

Tennessee Central Railway Company appealed in error to this Court.

The assignments of error present the following questions:

(1) The order of the Commission fixing the rate of $1.30 for coal from Wilder, Tennessee, to Nashville, Tennessee, is void because it is beyond the scope of the pleadings.

(2) There is no evidence that the existing rate of $1.45 a ton is excessive or unreasonable.

(3) There is no evidence that the rate of $1.30 a ton fixed by the Commission is a fair and just compensation for the services rendered by the carrier.

(4) The carrier, "should have been given the alternative as to the manner in which the alleged preference

or prejudice should be removed, and it should be left to the discretion of the petitioner (carrier) to determine which rate to lower or which rate to increase in order to remove the alleged prejudice or preference.''

(1) It is true that the only relief specifically sought in the original petition was a decrease in the rate from Monterey to Nashville. Petitioners alleged:

''Although Monterey is only 106 miles from Nashville, the defendant established the freight rate of $1.45 per ton to Nashville as it has maintained for several years on coal from Wilder, Tennessee into Nashville, a distance of approximately 130 miles. The freight rate per mile from Monterey into Nashville is therefore, $.0136, while from Wilder it is $.0112 per mile.

''Petitioners charge that this discriminates against coal traffic between Monterey and Nashville and is unlawful under the State law.''

It was charged in general terms that the rate of $1.45 from Monterey to Nashville was, ''excessive and unreasonable''; and that other cities of the state had a more favorable rate for the shipment of coal.

As stated, the specific defense was set up in the answer that Monterey and Wilder belonged to the same rate group for the shipment of coal, and that the rate of $1.45 was not unreasonable for the group.

An adjudication without pleadings and proof to support it is void. Fidelity-Phenix Fire Insurance Co. of New York v. Jackson, 181 Tenn. 453, 181 S. W. (2d) 625; Lewis v. Burrow, 23 Tenn. App. 145, 127 S. W. (2d) 795.

''Where the answer denies the precise case alleged in the bill, and sets up a different case, if the complainant fail to prove the case he alleges, and he be entitled to any relief on the case set up in the answer, the

Court will grant him such relief. It would be more regular in such cases, however, for the complainant to amend his bill and charge the case made in the answer; but, as Courts of Chancery disregard form, a decree will be rendered as though such an amendment had been made. But when relief is based upon an answer, the whole answer must be taken together, the matters of discharge as well as the matters of charge; and when so considered, must show that the complainant is entitled to relief, or none will be granted on the answer alone. In case the answer sets up a discharge, also, if the complainant wishes to avail himself of the matters of charge and disprove the matters of discharge, he must amend his bill, and allege the former and deny the latter.'' Gibson's Suits in Chancery, 475, section 558. Jordan v. Jordan, 145 Tenn. 378, 239 S. W. 423.

Great liberality in pleadings before the Commission is indulged. The pleadings may be quite informal. If facts are stated in the complaint and the answer thereto which fairly give notice to the parties and the Commission of the questions to be considered and the issues to be decided a valid order thereon may be entered. Code Section 5399; 42 Am. Jur., 445 and 458, Public Administrative Law, sections 114 and 124.

Judgments should be molded to suit the facts so as to determine the rights of all the parties. Code Section 8832; Burem v. Harville, 26 Tenn. App. 595, 174 S. W. (2d) 663.

The Commission sustained the contention of the carrier that the rate for the shipment of coal should be considered and fixed by groups, and ordered a rate for Tennessee Central Group No. 2, Monterey and Wilder, of $1.30 to Nashville. The contention of the carrier that

the order is beyond the scope of the pleadings cannot be sustained.

(2) and (3) These questions will be considered together: That there is no evidence that the existing rate of $1.45 a ton is excessive or unreasonable; and there is no evidence that the rate of $1.30 a ton fixed by the Commission is a fair and just compensation for the services to be rendered by the carrier.

The Railroad and Public Utilities Commission of Tennessee is an administrative body with various functions: (a) "To make rules for the future, which is legislative in its nature"; (b) "The application of these rules in particular cases, which is executive or administrative"; (c) "The decision of controversies arising under them, which is judicial in nature or quasi-judicial"; and (d) "The right to initiate investigations and to regulate utilities. . . . This power of initiative is mainly regulatory in character." In re Cumberland Power Co., 147 Tenn. 504, 249 S. W. 818.

The fixing of rates of a utility by the Commission is a legislative function. McCollum v. Southern Bell Telephone & Telegraph Co., 163 Tenn. 277, 43 S. W. (2d) 390.

This Court will not substitute its views and discretion for the views and discretion of the Commission on questions of fact where there is material evidence to support the conclusions of fact reached by the Commission. Dunlap v. Dixie Greyhound Lines, 178 Tenn. 532, 160 S. W. (2d) 413; Railroad Commission of Texas v. Rowan & Nichols Oil Co , 310 U. S. 573, 60 S. Ct. 1021, 84 L. Ed. 1368; American Telephone & Telegraph Co. v. United States, 299 U. S. 232, 57 S. Ct. 170, 81 L. Ed. 142; 42 Am. Jur., 626-633, Public Administrative Law, section 211.

■ We will review the determination of the Commission on questions of law. 42 Am. Jur., 622-626, Public Administrative Law, section 210.

■ An order of the Commission, which is not supported by evidence, is void because it is beyond the power of the Commission. 42 Am. Jur., 496-499, Public Administrative Law, section 150.

■ Whether there is any material evidence to support the findings and the order of the Commission is a question of law for the Court upon review; and to ascertain whether there is any material evidence to support the findings and the order of the Commission, and to that extent only, will this Court examine the evidence. It is not within our province to weigh conflicting evidence which was considered by the Commission. Alton R. Co. v. United States, 315 U. S. 15, 62 S. Ct. 432, 86 L. Ed. 586; United States v. Morgan, 313 U. S. 409, 61 S. Ct. 999, 85 L. Ed. 1429; Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431.

■ For the order of the Commission decreasing the fixed rate in this cause to stand upon judicial review, there must have been material evidence before the Commission to support the following facts: (a) The prevailing rate of $1.45 a ton was more than just compensation for the services to be rendered by the carrier; (b) The prevailing rate of $1.45 a ton was unjustly discriminatory against Nashville, Tennessee; and (c) The revised rate of $1.30 a ton was just and reasonable and allowed the carrier, "A fair and just compensation, having due regard to the rights and interests of both shipper and carrier, and in view of all the circumstances and conditions existing at the time." Code Section 5424.

The determination of essential quasi-jurisdictional facts by a commission is necessary to support an order of a commission regardless of a statutory requirement that such facts be found. Lancy v. Holbrook, 150 Fla. 622, 8 So. (2d) 465, 146 A. L. R. 202; see annotation in 146 A. L. R., 209-239 on subject: "Necessity, Form, and Contents of Express Finding of Fact to Support Administrative Determinations"; see also 42 Am. Jur., 494, Public Administrative Law, section 149.

The order of the Commission provides:

"The original petition filed in this cause makes the specific charge that the present rate of $1.45 per ton applicable on coal from Monterey, Tennessee to Nashville, Tennessee, is discriminatory and in violation of the statutes of Tennessee which make it unlawful for any railroad corporations to give an undue or unreasonable preference or advantage to any particular person or locality or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage. In substantiation of this averment of the petition it was shown that the Tennessee Central Railway Company has published tariffs from the Monterey Group, identified as Group 2 in its Tariff No. 11, fixing the rate of $1.30 per ton to Old Hickory. It appears that the purpose of this rate is to give a preference to the E. I. Dupont de Nemours Company which has large operations at the latter locality. The rate is applicable to steam coal and the record also shows that steam coal or run-of-the-mine coal is the only coal which can be shipped from the producers in the Monterey group.

"The Commission finds that said rate makes or gives an undue or unreasonable preference or advantage to the locality of Old Hickory and to the particular persons which receive coal at this point, to the extent that the

rate to Nashville exceeds $1.30, and that it subjects the locality of Nashville and various persons, companies and corporations at that locality to an undue or unreasonable prejudice or disadvantage.

"It is also shown by evidence introduced of record that there are several groups comprising points in Tennessee and numbered in the various coal tariffs applicable for shipment by various carriers to Nashville. Group 2 or the Monterey group on the Tennessee Central Railway is the closest in point of distance to Nashville. Some of the groups are at an average distance from Nashville greatly in excess of the average distance of the points in the Monterey group. In spite of this distance disparity the rate on all of the railroads to Nashville has been established at $1.45 per ton in violation of the principle of progression with increased distance. Rates on coal shipped from various coal fields to Knoxville are set up upon such a progressive basis with the more proximate coal fields enjoying the more favorable rates and the more distant fields having high rates, and the record shows that this is also true on rates for coal to Chattanooga. From a consideration of all of which the Commission finds that further discrimination is indicated.

"Upon consideration of the record and all matters pertaining thereto and especially in view of the findings made, the Commission is of the opinion that the railroad rate on coal from the points in Tennessee, set forth in what is known as the Monterey Group and further identified as Group 2 in Tennessee Central Railway Company Coal Tariff No. 11, to Nashville, Tennessee, should be fixed at $1.30 per ton, and that rates should be fixed as to intermediate points or the rate from Monterey to Nashville should be observed as a maximum rate to intermediate points.

"The Commission is of the further opinion that rates so fixed would remove the discrimination found to exist and would be fair and reasonable; and that sufficient notice has been given to the affected railroad carriers and other interested parties, of the hearing to warrant the issuance of a general order in this cause, which, in the opinion of the Commission, will best serve the interest of the public in general."

We think the Commission has stated findings of fact which will justify its order if the evidence supports the findings. In effect, the Commission found the prevailing rate was more than just compensation for the services to be rendered; Nashville was unjustly discriminated against by the prevailing rate; and the lower rate fixed by the Commission was just and reasonable and allowed a fair and just compensation to the carrier.

Taking that view of the evidence most favorable to the findings of the Commission and the order entered thereon, and disregarding all countervailing evidence, which we must do, there was evidence before the Commission to support the following facts: Monterey, Tennessee, and Wilder, Tennessee, are located on the Tennessee Central Railway Company line. These towns and others in their vicinity belong to Tennessee Central Rate Group No. 2 for the shipment of coal. Tennessee Central Railway Company is the only railway carrier which serves this group directly. Group rating for the shipment of coal is the custom in all coal producing states; and the producers, the carriers, and the utilities commissions have recognized and accepted the fact that the fixing of rates by groups for coal shipments is helpful to all concerned.

The published rate for shipment of coal from Tennessee Central Rate Group No. 2 (Monterey-Wilder) to

Nashville is $1.45 a ton. This rate for this intrastate shipment was fixed by following the interstate rate fixed by the L. & N. Railroad Company and approved by the Interstate Commerce Commission for the shipment of coal from Western Kentucky mines to Nashville. The distance from the Western Kentucky mines to Nashville and the distance from the Monterey-Wilder group to Nashville are about the same.

The average distance from Tennessee Central Rate Group No. 1 to Nashville is one hundred forty-two miles. The average distance of Tennessee Central Rate Group No. 2 to Nashville is one hundred twenty-one miles. Group No. 1 lies on the same railway line as Group No. 2, but farther to the east.

There are seven rate groups from which coal is shipped to Nashville at the rate of $1.45 a ton. The average distance of each of the seven groups from Nashville ranges upward from Tennessee Central Rate Group No. 2 (one hundred twenty-one miles) to one hundred fifty-nine miles. There is, therefore, the same rate for the shipment of coal to Nashville for average distances varying from one hundred twenty-one miles to one hundred fifty-nine miles.

The rates for shipping coal to Knoxville and to Chattanooga from various groups are graduated with the groups which are nearer to these cities enjoying the more favorable rates.

During the year 1944 the Western Kentucky mines furnished about seventy per cent. of the coal used in Nashville, and the Monterey-Wilder group furnished about five per cent. The coal from the Monterey-Wilder group is a better grade of coal than the coal from the Western Kentucky mines.

Most of the coal from Tennessee Central Rate Group No. 2 moves eastward to Spring City, a distance of seventy-seven miles at a rate of 95¢ a ton. The rate a mile for the shipment of coal from Tennessee Central Rate Group No. 2 to Spring City is substantially less than the rate a mile for the shipment of coal from this same group to Nashville; although the distance to Spring City is seventy-seven miles and the distance to Nashville is one hundred twenty-one miles. Normally, the greater distance should carry the lesser rate a·mile.

The transportation of coal is a lucrative business for a carrier. About sixty per cent. of the business of the Tennessee Central Railway Company in carload lots is coal business. Upon the hearing an effort was made to develop the cost of transporting coal by cross-examination of the witnesses who testified for the carrier. These witnesses stated that the cost of transporting coal could not be determined by any facts within the knowledge of the carriers. One expert testified that coal rates were fixed by ''guess'' based upon experience.

Rates had been in effect for shipment of coal from other groups for many years which were more favorable than Group No. 2 of the Tennessee Central Railway Company. The carriers were apparently satisfied with these other rates. They were transporting coal for profit, and it was stated that such transportation would be discontinued when it proved unprofitable. Upon a consideration of all the evidence, we think specific facts were proved which support the finding of the Commission on the essential ultimate facts which must be found by the Commission under the statute creating it so as to justify its order in this cause.

The carrier contends that difference in rate or difference in distance does not support a finding that the as-

sailed rate is unjust and unreasonable, or that it was unjustly discriminatory against Nashville. Decisions of the Interstate Commerce Commission were cited to sustain this contention. Hoffstot v. Monongahela Ry. Co , 248 I. C. C., 248; Hammond Redwood Company v. Northwestern Pacific R. Co., 248 I. C. C., 733; Bronstein v. Baltimore & O. R. Co., 215 I. C. C., 136; W. S. Dickey Clay Mfg. Co. v. Nashville, C. & St. L. Ry., 188 I. C. C., 45; Illinois Coal Traffic Bureau v. Ahnapee & W. Ry. Co., 204 I. C. C., 225.

The evidence in this case goes beyond a showing of the difference in rates for various distances and a comparison of same; and we think it was sufficient to support the order of the Commission.

(4) Should the carrier have been given the discretion of removing the discrimination against Nashville which the Commission found to exist?

The carrier insists that such discretion should have been given to it and cites Texas & Pacific Railway Co. v. United States, 289 U. S. 627, 53 St. Ct. 768, 77 L. Ed. 1410, to sustain its insistence. The decision of the court in that case was based upon a construction of the Interstate Commerce Act. Under that Act the primary duty rested upon the carrier to establish just and reasonable rates. Title 49 U. S. C. A., Sec. 1, parts (4) and (6).

To the contrary, the Tennessee statute makes preferences unlawful, Code Section 5418; and the primary duty of fixing rates is placed upon the Tennessee Commission, not the carrier, Code Sections 5397 and 5424. Wherefore, the Commission which was created by the Tennessee Act, and derives its power and authority therefrom, properly construed the Act to vest the authority of fixing the rate in this case so as to remove the discrimination against Nashville in itself and not in the carrier.

Having held that the pleadings properly put in issue the rates from Tennessee Central Rate Group No. 2 to Nashville, the assignment that the carrier was deprived of its property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States must be overruled. The assignment was based upon the ground that the order of the Commission was void because it was beyond the scope of the pleadings, and the carrier had no opportunity to be heard upon the issues of fact which were made the basis of the order of the Commission.

Furthermore, as we remember the oral argument in this Court, the carrier abandoned the constitutional question made in the assignment of error.

There is no error in the judgment of the circuit court, so it is affirmed with costs.

Felts and Howell, JJ., concur.