# ROBERTS v. KNOXVILLE TRANSIT LINES.—
## 259 S. W. (2d) 883.

Eastern Section. November 19, 1952.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

596

John Gilbertson, W. W. Kennerly, H. G. Fowler and John Roundtree, all of Knoxville, for plaintiff in error.

Anderson & Snepp, of Knoxville, for defendant in error.

McAMIS, J. This proceeding originated before the Knoxville Public Utilities Commission upon the ap-

plication of Swan Seymour for a certificate of convenience and necessity to operate a bus under contract with Sears, Roebuck & Company from downtown Knoxville to Sears' Store, a distance of about one and one-half miles. A hearing before the Commission's Co-ordinator resulted in a recomendation that a certificate be granted. This recomendation was followed by the Commission and Knoxville Transit Lines thereupon applied to the Circuit Court of Knox County for writs of certiorari and supersedeas. Upon certiorari, the Commission sent up the entire record including a transcript of the evidence considered by the Co-ordinator and by the Commission.

Swan Seymour, Sears Roebuck & Company, and a majority of the members of the Commission moved to dismiss the petition for certiorari and supersedeas on the grounds: (1) The petition shows on its face that the Court was being asked to substitute its judgment for that of the Commission; (2) The petition and record show that there was ample, material evidence to support the findings and conclusions of the Commission; (3) The petition and record show that the Commission did not act arbitrarily, illegally or in excess of its jurisdiction.

The motion was submitted to the Court on argument of counsel February 20, 1950, and no further action was taken until March 10, 1952, when the Court filed an opinion holding the motion not to have been well taken. On March 31, 1952, respondents Swan Seymour et al. filed a written application for an extension of time within which to file an answer and submit additional proof to refute the charges of the petition and sustain the action of the Commission. This was denied and the present appeal resulted. In disposing of the appeal the parties will be referred to by name or as petitioner and respondents as they appeared in the Circuit Court.

Petitioner Knoxville Transit Lines has moved to strike the transcript of the evidence before the Commission because it was not authenticated as a bill of exceptions and to dismiss the appeal because respondent Seymour has pending before the Commission a second application for a certificate of convenience and necessity to operate his bus over the same route as a common carrier, designed to meet the criticism of the petitioner that the Commission exceeded its authority in granting a common carrier certificate when only a certificate as a contract carrier was sought in the original application.

We think the motion to strike the bill of exceptions is ruled by Hoover Motor Express Company v. Railroad & Public Utilities Commission, 193 Tenn. 284, 246 S. W. (2d) 15, 16. In that case a motion to strike the bill of exceptions on similar grounds was made and overruled. The proceeding originated before the Railroad and Public Utilities Commission and was carried to the Circuit Court on certiorari. Under the mandate of the Circuit Judge the Commission certified its entire record including a transcript of the evidence to the Circuit Court and it was there filed by the Clerk of that Court. No further evidence was heard by the Circuit Judge and, to review his action, the case was appealed to the Court of Appeals solely upon the transcript from the Commission. As in this case no bill of exceptions, as such, was filed and on that ground the Court of Appeals affirmed the judgment of the Circuit Court. The Supreme Court, speaking through Mr. Justice Gailor, concurred with the Court of Appeals in holding a bill of exceptions necessary but said that the same result could have been accomplished by ''an order of the Trial Judge directing that the original transcript before the Railroad and Public Utilities Commission, should be sent up to the Court of Appeals as

part of the record, but showing further affirmatively, that such transcript contained all the evidence heard in the cause in the Circuit Court * * *.''

Such an order was entered and the indicated procedure followed in the present case and we think, both upon the authority of the Hoover case, and as a matter of sound practice, the motion is without merit. No evidence except that heard by the Commission and the Circuit Judge appears in the transcript. The Circuit Judge has ordered that all documents sent up by the Commission to the Circuit Court be transmitted to this Court in their original form. These documents were marked filed by the Clerk when received from the Commission, prior to the trial, and the Clerk has now certified that the documents ordered sent up by the Trial Judge and attached to his certificate ''were all the papers contained in the record forwarded to the Circuit Court by Knoxville Public Utilities Commission on order of the writ of certiorari in the foregoing cause'', and the minutes of the Circuit Court show that no other evidence was heard.

Code Section 9014 makes the evidence heard by the Commission proof to be considered by the Trial Judge and, therefore, a part of the record. The writ of certiorari and the Clerk's act in filing it make the technical record of the Commission a part of the technical record in the Circuit Court. We are unable to see how the exact record and evidence considered by the Trial Court would be made more certain by having it copied and approved as a bill of exceptions.

The practice is in accord with the spirit, if not the letter, of Section 8967 of the Official Supplement to the Code extending to law cases the provisions of the original Code Section 8967 making depositions and exhibits a part of the record in Chancery cases on appeal, without being

included in the bill of exceptions. If necessary, we think the proof in the present case might without doing violence either to the statute or to established procedure be treated as depositions in the sense of the statute.

■ We cannot agree that the questions presented by this appeal have become moot because another petition is pending before the Commission designed to eliminate certain grounds of attack on the certificate of convenience and necessity presently under consideration. We can only speculate upon the action that will be taken by the Commission. It may or may not grant another certificate and we think the parties in interest are entitled to have reviewed the action of the Circuit Court holding the original certificate invalid.

■■ It seems proper to respond at the outset to the contention of Knoxville Transit Lines that the material evidence rule previously followed in reviewing the action of administrative bodies is not to be applied in the present case. As we have seen, the case was submitted to the Trial Judge February 20, 1950, and held under advisement until March, 1952. On March 15, 1951, the Legislature enacted Chapter 261 of the Public Acts of 1951 amending Code Section 9014 to require the Chancellor to weigh the evidence in reviewing on certiorari the action of a board or commission.

Pretermitting the question of whether the Act was intended to apply to decisions involving motor carriers, Code Section 5501.16, to apply it in the present case would give it retroactive effect. We recognize that statutes which are purely procedural, subject to certain limitations, may be applied to pending cases. The Supreme Court has said, however, that the 1951 Act is not to be so applied. Hoover Motor Exp. Co. v. Railroad & Public Utilities Commission, supra. We think this ruling is

supported by sound reason. The parties submitted their rights to the Court under the material evidence rule. Under that rule the action of the Commission might be sustained though it might not be under the new rule. Under the old rule a party might be willing to submit his case on the evidence before the Commission but, under the new rule, would feel compelled to introduce further evidence as he has a right to do under Code Section 9014. The rules should not be changed in a manner to affect substantive rights after the parties have submitted their rights to the court. In addition, we note that Knoxville Transit Lines has not assigned error on this question. Applying the material evidence rule, we pass to a consideration of the principal question: Did the Court err in over turning the findings and conclusions of the Commission?

The record shows that, prior to September, 1949, Sears Roebuck & Company chartered a bus from Knoxville Transit Lines to operate as a free bus for customers between downtown Knoxville and its store. Later, Sears leased a bus from Seymour and operated it over the same route. Still later, an agreement was reached between Seymour and Sears that Seymour would operate the bus for Sears at an agreed sum payable monthly. Seymour, on September 13, 1949, applied to the Public Co-ordinator of Knoxville for a certificate of convenience and necessity as a contract hauler. By the application, Seymour sought to continue carrying Sears' customers in the same manner as before except that the bus would be operated by Seymour as a contract hauler.

The application was heard by the Co-ordinator on September 19, 1919, on the same evidence now appearing in the transcript, in the presence of counsel for Knoxville Transit Lines. As shown, the Co-ordinator passed favor-

ably on the application. His recommendation was adopted by the Commission after a hearing at which both Seymour and Knoxville Transit Lines were represented on February 1, 1950, and on that date a certificate issued to Seymour granting him the right to operate a bus for the free transportation of customers of Sears, the expenses of the operation to be borne by Sears in an amount to be fixed by contract between Seymour and Sears. The certificate fixes the hours of departure between 9:15 A. M. and 4:30 P. M. except on Friday when the bus is to be operated until 8:30 P. M., with the proviso that stops for taking on and discharging passengers were to be limited to Sears Store and the regular bus stops on Gay Street near Wall and Main Avenues in downtown Knoxville.

We quote the findings of the Co-ordinator, concurred in by the Commission:

"The petitioner filed in this matter a franchise for the purpose of carrying passengers from the up-town district to the Sears Store and only carrying those passengers that had business at the Sears Store, and none other. That the Sears Store paid a sum of money for the operation of the bus and received no compensation whatever from the passengers that are carried. The buses having already started operation at the time of this hearing, and the experiences of the passengers carried were presented before the Coordinator.

"The evidence showed that there were about 500 passengers riding the bus from town to the store and from store to town in 2 days and 1000 riding both ways on Saturday. It is further shown that some of these passengers were not riding for the purpose of patronizing the said store, but were using it to ride from town to their home.

"Knoxville Transit Lines introduced evidence of the fact that the said company, Knoxville Transit Lines, operated buses on Central Avenue at regular intervals and was sufficient to take care of the passengers that would want to go to the Sears Store. The evidence was presented also to the effect that the said Sears Bus hauled about 500 passengers per week and about 1000 on Saturday.

"It appeared that the petitioner, Seymour, had entered into a contract with the Sears Company on September 14th, in which Seymour was to carry the said passengers as aforesaid, and the Sears Company to pay $245.70 each week and for the use of the bus carrying said passengers, and Seymour was to furnish all of the drivers and pay expenses of the said bus. That Seymour had purchased the bus adequate to carry these passengers, and that he is financially able to carry on the said operation.

"The Knoxville Transit Lines introduced evidence of the fact that if this bus were allowed to operate, it would cause a deficit of the Knoxville Transit Lines on that particular line. That is to say the North Lonsdale and Lincoln Park Lines, which run from Knoxville into those suburbs and passes Sears Store.

"The question before the Coordinator is whether or not the proposed operation is reasonable and practical, and as to whether or not there is a demand for said service. We are of the opinion that the operation of the said bus would not deplete the income from the Knoxville Transit Lines, or create serious damage to said company. That the said Sears Special would haul a large number of people in the City of Knoxville into suburbs where the store is located, would not justify that operation. Assuming that the number of passengers, riding the said bus, would not go to the store in the event they had to pay a

fare to do so. That a free ride for the citizens of Knox-ville would be justified in the operation of the bus. We are not considering or reporting on the fact that the said bus would take more people to trade with the Sears Company, since we feel it is not an item to be considered in granting franchises of this nature.

"If this franchise is granted by the Commission, it should be made clear that the Sears Bus should haul no one except from town directly to the store and from the store to town, and those that would be customers of the said store. We think this is a service that should be allowed to be rendered for the benefit of the riding public."

The petition for certiorari of Knoxville Transit Lines attacks the hearing before the Commission on the ground that Seymour's application was pre-judged. We pass that question for the present to first consider the charges that the certificate is illegal because: (1) The proof before the Commission showed that Seymour was operating as a common carrier of passengers and had applied only for a certificate to operate as a contract carrier and, therefore, there was no application before the Commission to support the issuance of a certificate, and (2) the Knoxville Transit Lines, under the undisputed evidence, was furnishing adequate carrier service over the route in question and the competition of Seymour considering pertinent factors pretermitted by the Commission, would result in competitive and unneeded service for the benefit of Sears and not the public with resulting serious depletion of revenues to it. As we interpret the opinion of the learned Circuit Judge he found both objections valid.

As to the first ground we are forced to disagree both as to procedure and the nature of the operation contemplated by the certificate.

606

■ We think, the applicant agreeing, the Commission could, without acting illegally, issue a common carrier certificate under an application for a certificate to operate as a contract carrier if the language of the application is sufficient to convey reasonable certainty of meaning as to the extent and character of the operation. The Commission could look beyond form to substance and act accordingly.

In Tennessee Central Railway Co. v. Pharr, 29 Tenn. App. 531, 198 S. W. (2d) 289, 292, the Railway Company took the position that a rate reduction ordered by the Commission was beyond the scope of the pleadings. In response to this contention Judge Hickerson said:

"Great liberality in pleadings before the Commission is indulged. The pleadings may be quite informal. If facts are stated in the complaint and the answer thereto which fairly give notice to the parties and the Commission of the questions to be considered and the issues to be decided a valid order thereon may be entered. Code Section 5399; 42 Am. Jur. 445 and 458, Public Administrative Law, sections 114 and 124."

■■ We are also of opinion the operation is not as a matter of law to be classed as that of a common carrier of passengers.

Code Section 5501.1 differentiates between motor carriers and contract hauler, the jurisdiction to control which has now passed to the affected municipalities under Code Section 5447.1. Motor carriage is defined by the statute as "the transportation of persons or property or both or of providing or furnishing such transportation service, for hire as a common carrier." "Contract hauler" is defined as "any person, firm or corporation engaged in the transportation for compensation or hire of

persons * * * for a particular person or corporation to or from a particular place or places under special or individual agreement or agreements * * *."

Our 'Supreme Court has said that a common carrier of passengers is one who undertakes for hire to carry all passengers indifferently who may apply for passage. McGregor v. Gill, 114 Tenn. 521, 86 S. W. 318.

The certificate issued to Seymour and under which he must operate places no obligation upon him to accept indiscriminately any and all persons who apply for transportation. In fact, apart from his contractual obligation to Sears, he is not duty bound to accept anyone for passage. His contract binds him to accept only customers of Sears and transport them at Sears' expense either from its store to downtown Knoxville or to its store from downtown when it is indicated passage is desired for the purpose of trading at Sears. Thus, the Commission could well say in the words of the statute defining "contract hauler" that the carriage was to be for a particular corporation under an individual ageement with it and from a particular place or places and not that of a common carrier.

A leading case on the question and dealing with an analogous situation is State ex rel. Public Utilities Comm. of Utah v. Nelson, 65 Utah 457, 238 P. 237, 239, 42 A. L. R. 849. In that case Nelson contracted with an association (which had been denied a permit for the purpose by the Utah Public Utilities Commission) to carry guests of the association to and from its camp. He was to be paid $20 per day for carrying guests of the camp free of charge to them. The Commission sought to enjoin Nelson's operation claiming he was engaged in the business of a common carrier without a permit from the Commission though with few exceptions he carried no passengers

except guests at the camp. The Supreme Court of Utah held that Nelson was not a common carrier of passengers which the court defined as one who undertakes for compensation to carry all who choose to employ him. The court reasoned: "For such service the defendant was paid, not by the guests transported by him, but by the association, $20 a day, regardless of whether the guests transported by him were few or many. The transportation was not the main or principal object or business. It was but an incident or secondary to another, the community camp and its maintenance."

Other cases of similar bearing include Dairymen's Co-op. Sales Ass'n v. Public Service Commission, 318 Pa. 381, 177 A. 770, 98 A. L. R. 218; Baltimore etc. R. Co. v. Lichtenberg, 176 Md. 383, 4 A. (2d) 734; Ill. Highway Transportation Co. v. Hantel, 323 Ill. App. 364, 55 N. E. (2d) 710; Dover S. & R. Ry. Co. v. Wentworth, 84 N. H. 258, 149 A. 505. For text treatment see 9 Am. Jur. 432, Carriers, Sec. 5 and 13 C. J. S., Carriers, Secs. 3, 530, 531, pp. 25, 1036.

Surface Transportation Corp. of New York v. Reservoir Bus Lines, Inc., 271 App. Div. 556, 67 N. Y. S. (2d) 135, is strongly relied upon by counsel for Knoxville Transit Lines as holding to the contrary. In that case, Surface Transportation Corporation sought to enjoin defendant from operating an omnibus without having obtained a certificate of convenience and necessity. The operation was under contract with the owners of certain apartment houses on the line of complainant carrier and adequate service was being provided by the complainant. We are not advised whether New York regulatory statutes contemplate the concurrent operation of both common carriers and contract haulers over a given route. It appears, however, that the Court's opinion was influenced,

at least in part, by the New York statute defining as a common carrier any person or corporation carrying passenger at a rate of fifteen cents or less along or upon any street, avenue or public place.

Our statute, Code Section 5501.7, clearly contemplates that, subject to prescribed limitations, a hauler's certificate may be issued if the Commission finds the public will be thereby benefited notwithstanding the existence of other transportation service by a common carrier. Other cases cited in the reply brief including Gornish v. Pennsylvania Public Utility Commission, 134 Pa. Super. 565, 4 A. (2d) 569 and State v. Rosenstein, 217 Iowa 985, 252 N. W. 251, do not appear to involve the type of regulation provided by our statute and appear to involve primarily the adoption of subterfuges to escape classification as a common carrier.

■■ This brings us to the second question: Does the evidence support the Commission's action? We think it does:

Code Section 5501.6 empowers the Commission to regulate contract haulers. Section 5501.7 outlines the procedure, provides for notice of the application to common carriers who might be affected by the granting of a hauler's certificate and directs that the Commission "shall give reasonable consideration to the transportation service being furnished by * * * motor carrier, or contract hauler * * *, the effect * * upon the traveling public using said highways, the effect which such proposed transportation service may have upon other transportation service being rendered and to all pertinent facts; and, if it shall appear to the commission, from the evidence, that the proposed operation of the applying contract hauler will impair the efficient public service of any authorized common carrier or common carriers then

adequately serving the same route or territory such application may be refused."

The proof shows that at the time the certificate was granted hundreds of shoppers were making daily use of the bus and it was for the Commission to say whether a closed door service between Sears' store and the main shopping center of the city would benefit the public. One benefit, of course, was free transportation for the purpose of shopping. Another was having a non-stop bus available at frequent intervals during the shopping period of the day.

But a public benefit was not a necessary predicate for granting a hauler's certificate. In State v. Harris, 168 Tenn. 159, 163, 76 S. W. (2d) 324, 325, it was said:

"The statute permits the use of the highways for the tranportation of passengers and property under private contract, as well as by common carriers. The regulatory provisions must be construed, if possible, so as to advance and not defeat this legislative intent. With this in view, it seems obvious that when the statute, by the use of the word 'shall,' mandatorily requires that a permit shall be issued for a contract service which will be a benefit to the public it does not necessarily imply that the permit must be denied if no public benefit is shown. The statute contains no mandatory direction for the refusal of a contract hauler's permit. Even when the granting of the permit might impair the service of an authorized common carrier, the direction of section 7(a) is that the 'application may be refused,' leaving to the Commission some discretion as to its issuance,"

In view of this holding, we cannot follow the cases from other jurisdictions cited in the reply brief as holding that a public benefit is prerequisite to the granting

of a certificate of convenience and necessity as a contract hauler and that if the service already available is found to be adequate a hauler's certificate must be denied.

Other Tennessee cases clearly hold that a certificate of convenience and necessity does not protect against lawful competition from which a loss of revenue may result. Dunlap v. Dixie Greyhound Lines, Inc., 178 Tenn. 532, 160 S. W. (2d) 413; Hoover Motor Express Co., Inc. v. Taylor, 185 Tenn. 88, 203 S. W. (2d) 366.

As held in the cases cited these are matters to be considered by the Commision in exercising its discretion as to whether a certificate should issue over the objection of a competing carrier. We do not find, from undisputed evidence, or conclusions necessarily be be drawn from the evidence that considering all the relevant factors the granting of the certificate here involved was capricious or arbitrary.

Stress is laid in the reply brief on the insistence that Seymour has no way to determine whether a passenger has been a customer of Sears or intends to be when application is made for passage on his bus. The proof shows that a relatively small number of passengers have boarded the bus improperly. The proof also shows, however, that a number of these held transfers from Knoxville Transit buses. There is no showing that Seymour has not tried and will not try in good faith to exclude such passengers from his bus and his own interest and that of his employer would demand that they be excluded. This is an administrative matter to be considered by the Commission along with other pertinent factors. If abused or the operation becomes impractical the Commission is empowered to revoke the certificate. Code Section 5501.-10.

 The petition for certiorari as shown charges, however, that the members of the Commission pre-judged the application and we think petitioner is entitled to a trial on that question. Doubtless, the trial judge would have tried that issue had he not reached the conclusion there was no evidence to sustain the Commission's action. The burden of proof was upon the petitioner to sustain this charge and, apparently, its counsel treated the pleading filed by respondents as a motion to test the sufficiency of the proof since no motion for judgment by default was ever made. We do not think this charge can be taken as admitted under the pleadings.

 We think Code Section 9013 requiring defendants in certiorari proceedings of this nature to defend by answer within thirty days after the transcript is filed should not be given such a mandatory construction and application that where the court holds a motion to dismiss even though improvidently filed under advisement beyond the period of thirty days no defense on the merits could thereafter be made. The Court is empowered by the statute to grant extensions of time and where the sufficiency of the pleading under the statute is not questioned either by the Court or counsel until long after the time for filing answer has expired the statute should be held directory to the extent the court might consider that an extension of time had been granted by implication. We feel constrained to so hold in this case.

For the reasons indicated the judgment must be reversed and the cause remanded for a new trial consistent with this opinion. Costs of appeal will be taxed to defendant in error and other costs left to abide the final result.

Hale and Howard, JJ., concur.