GULF, MOBILE & OHIO RAILROAD COMPANY et al.
v. The RAILROAD AND PUBLIC UTILITIES COM-
MISSION of the State of TENNESSEE et al.—271 S.W.
(2d) 23.

Middle Section. January 15, 1954.

Petition for Certiorari denied by Supreme Court, May 21, 1954.

James A. Bistline, Washington, D. C., R. Wray Henriott, Louisville, Ky., J. E. Johnson, Jr., Memphis, Dan E. McGugin, Wm. H. Swiggart, Edwin F. Hunt, Nashville, for complainants.

Alfred T. MacFarland, of Nashville, for Railroad & Public Utilities Commission.

Richard D. Gleaves, Val Sanford, and James C. Havron, all of Nashville, for Tennessee Petroleum Transport Ass'n and Petroleum Motor Carriers.

HOWELL, J. This is an appeal from a decree of the Chancery Court of Davidson County, Tennessee, dismissing a petition and supplemental petition filed by the Gulf, Mobile and Ohio Railroad Company and other railroad companies for writs of Certiorari and Supersedeas to review the action of the Railroad and Public Utilities Commission of Tennessee in suspending a petroleum tariff issued by the railroads on September 8, 1949.

The petitioning railroads by proper procedure have perfected an appeal to this Court and have assigned errors.

It is insisted for the appellants that the Chancellor erred in dismissing their petitions and that the Commission had no power or authority under the law to fix the rates as it did and that its order was not supported by material evidence.

An accurate statement of the case appears in the opinion of the Chancellor and is as follows:

"It appears from the record in this cause that in 1940 and prior to World War II the railroads carried the greater portion of all petroleum products terminated in Tennessee. During the war an order of the Office of Defense Transportation was issued prohibiting railroads from transporting petroleum products for distances less than 200 miles, as a result of which motor carriers entered into the field of petroleum transportation to take care of the shorter distances. As a result the railroads lost a major portion of this petroleum business.

"After the removal of the orders of the Office of Defense Transportation, the railroads were unsuccessful in recapturing the lost traffic, including petroleum, and especially a 25% increase on March 20, 1949, further losses in said petroleum traffic were suffered by the railroads.

"In an effort to recapture a portion of this business, the railroads undertook to reduce petroleum rates in its tariffs dated September 8, 1949, hereinabove mentioned. As a result of the Commission's refusal to permit the railroads to reduce their tariffs and of its entering the orders of April 14, and July 7, 1950, the

petitioners allege that they are entitled to have a decree declaring that their tariff of September 8, 1949, was unlawfully suspended without supporting evidence, and by an arbitrary and unlawful assumption of powers contrary to the provisions of Tennessee statutes and constitution and pray that the rates proposed in the suspended tariff be permitted to go into effect. Tariffs of charges for petroleum products were fixed by the Commission for the rail and motor carriers at exactly the same amount.

"The trucking interest intervened, and in an effort to uphold the orders and ruling of the Commission, insisted that the motor carriers of petroleum products constitute a vital part of the transportation system of the State of Tennessee, the continuance of which the public interest requires; that in authorizing identical tariffs for the railroads and truck carriers the Commission has acted for the best interest of all parties, including the shippers and carriers and the public.

"Counsel for petitioners in their brief state their contentions in part, as follows:

" 'The power delegated to the Commission by the Legislature of Tennessee in the regulation of railroad rates is expressly limited to revision supported by finding (1) that, and "in what particular", rates prescribed in tariffs filed by the railroads "are more than just compensation for the service to be rendered", or (2) that such tariffs make "unjust discrimination * * * against any person, locality, or corporation". (Code Sec. 5424).

" 'The Legislature has granted to the Tennessee Commission no power or authority to initiate or pre-

scribe a rate for rail transportation except for railroads "failing to furnish tariffs of charges as above required." Code Sec. 5425.'

"In support of the above contentions petitioners argue that the Courts, both State and Federal, recognize that there is a so-called 'zone of reasonableness' within which a rate might be fixed which is not so high as to produce unreasonable compensation for the transportation service, and therefore resulting in a profit rather than a loss to the railroads involved. That within the 'zone of reasonableness' the Courts uniformly hold the carrier is free to adjust its own rates to meet competition, and the regulatory power of the State is without jurisdiction to impose its will upon the management of the carrier.

"It is uncontroverted by the parties that the Commission can exercise no authority which is not expressly conferred upon it by the Legislature. (Pharr v. [Nashville, C. & St. L.] Ry., 186 Tenn. 154 [208 S. W. 2d 1013]).

"It becomes important, therefore, to determine whether the defendant Commission had been granted by the Legislature the right to pass upon and fix rates of petitioners, when said rates are within the 'zone of reasonableness.' In order to do this, it becomes necessary first to examine the pertinent Code sections and the Court deems these to be 5397, 5424, 5425, 5426, and 5428 of the 1932 Code of Tennessee, which read, respectively, as follows:

" '5397. To fix freight and passenger rates, and to prevent unjust discrimination; and to require depots. —Authority is vested in the commission, and it is made its duty, to supervise and fix the rates, charges,

and regulations of railroad freight and passenger tariffs; to correct abuses and to prevent unjust discrimination and extortions in the rates of freight and passenger tariffs on the railroads in this state, and to require the location of such depots and the establishment of such freight and passenger buildings as the conditions of the roads, safety of freight, and public comfort or convenience may require.'

" '5424. Duty to furnish tariffs; duties of commissioners.—It shall be the duty of all persons or corporations who shall own or operate a railroad or motor bus line in this state, to furnish the commission with its tariff of charges for transportation of every kind, and it shall be the duty of said commission to revise said tariff charges so furnished, and determine whether or not, and in what particular, if any, said charges are more than just compensation for the service to be rendered, and whether or not unjust discrimination is made in such tariff of charges against any person, locality, or corporation, and when such charges are corrected, as provided by said commission, the commission shall then append a certificate of its approval to said tariff of charges; but in revising or establishing any and every tariff of charges, it shall be the duty of said commission to take into consideration the character and nature of the service to be performed and the entire business of such company, together with its earnings from the passenger and other traffic, and any other facts and circumstances which may affect the question of just and reasonable rates, and shall so revise such tariffs as to allow a fair and just compensation, having due regard to the rights and interests

of both shipper and carrier, and in view of all the circumstances and conditions existing at the time.'

" '5425. To supervise tariff of charges.—It shall be the duty of said commission to exercise a careful and watchful supervision over every such tariff of charges from time to time as justice to the public and each of said companies may require, and to increase or reduce any of said rates according as experience and business operations may show to be just; and said commission shall accordingly fix the tariffs of charges for these companies failing to furnish tariff of charges as above required.'

" '5426. Companies to post rates.—It shall be the duty of railroad companies or other persons operating any railroad in this state, to post, at each of its depots, all rates, schedules, and tariffs for the transportation of passengers and freights, made or approved by said railroad commission, with said certificate of approval, in some conspicuous place at the depot.'

" '5428. Notice of time and place of considering change of rates by commission.—When any change is contemplated to be made in the schedule of passenger or freight rates of any such company by the commission, whether by revising rates already fixed by the commission or by fixing and establishing rates originally, said commission shall give the person or corporation operating or managing said company notice in writing at least ten days before the change, of the time and place at which such change will be considered.' "

Thus it is seen that the authority and jurisdiction of the Commission is set out by statute and it is expressly stated

that the Commission shall exercise a careful and watchful supervision over the tariffs and increase or decrease them as justice to the public and the carriers may require.

The Supreme Court of Tennessee has in a recent decision published in the advance sheets of November 17, 1953, in the case of Hoover Motor Express Co. v. Railroad & Public Utilities Commission, Tenn., 261 S. W. (2d) 233, 235, determined the extent of a review by the Courts of orders of the Commission and in that case held that the Statutory Amendment providing that in making findings of facts the Chancellor shall weigh the evidence and determine the facts by a preponderance of proof, only required the Chancellor to review the evidence and to determine by a preponderance thereof whether or not the Commission had acted beyond its jurisdiction arbitrarily, fraudulently or illegally, and did not authorize a cancellation of the Commission's order on the ground that, although there was material substantial evidence to support the Commission's findings, the evidence strongly preponderated against it. In that case the Court said:

"As this Court has repeatedly held, the review before the Chancellor on the writ of certiorari was limited to the review provided by the common law writ, although in strictness no common law writ now exists in Tennessee, and the writ here was that defined by Code sec. 8989. Dunlap v. Dixie Greyhound Lines, 178 Tenn. 532, 160 S. W. 2d 413; Tennessee Cartage Co., Inc. v. Pharr, 184 Tenn. 414, 199 S. W. 2d 119; Hoover Motor Express Co., Inc. v. Taylor, 185 Tenn. 88, 203 S. W. 2d 366. By Code sec. 8989, review is limited to a determination whether the 'inferior tribunal, board, or officers exercising judicial

functions has exceeded the jurisdiction conferred, or is acting illegally.'

\* \* \* \* \* \*

"The action of the Commission in giving or withholding certificates of convenience and necessity is an administrative function no different from the action of the Commission in the rate-making power of which Judge Cook, speaking for a unanimous Court, said:

" 'The Courts cannot directly or indirectly exercise the rate-making power \* \* \*.' Lewis v. Nashville Gas [& Heating] Co., 162 Tenn. 268, 283, 40 S. W. 2d 409, 414.

" ' \* \* \* "That neither the legislative nor the executive branches can constitutionally assign to the judicial any duties but such as are properly judicial, and to be performed in a judicial manner." ' Muskrat v. U. S., 219 U.S. 346, 348, 31 S. Ct. 250, 252, 55 L. Ed. 246, 248; Hayburn's Case, 2 Dall. [409], 2 U. S. 409, 1 L. Ed. 436.

"Under the common law writ of certiorari, questions of law only will be reviewed by the Courts. The Law of Certiorari by George E. Harris, sec. 48, sec. 59, sec. 82; 42 Am. Jur., Public Administrative Law, p. 622, sec. 210. An order of the Commission which is not supported by any evidence is arbitrary and void, and therefore, within judicial power to quash under the common law writ of certiorari. 42 Am. Jur., Public Administrative Law, sec. 150, p. 496. The question whether there is any material evidence to support the finding and order of the Commission is, therefore, a matter of law for the Court upon review, and to ascertain that, whether there is any material

evidence, is the limited purpose for which the evidence introduced before the Commission is admissible in the Court granting the writ of common law certiorari.''

In the case of Tennessee Central Ry. Co. v. Pharr, 29 Tenn. App. 531, 198 S. W. (2d) 289, 292, this Court in an opinion by Hickerson, J., said:

"The Railroad and Public Utilities Commission of Tennessee is an administrative body with various functions: (a) 'To make rules for the future, which is legislative in its nature'; (b) 'The application of these rules in particular cases, which is executive or administrative'; (c) 'The decision of controversies arising under them, which is judicial in nature or quasi-judicial'; and (d) 'The right to initiate investigations and to regulate utilities. * * * This power of initiative is mainly regulatory in character.' In re Cumberland Power Co., 147 Tenn. 504, 249 S. W. 818.

"The fixing of rates of a utility by the Commission is a legislative function. McCollum v. Southern Bell Telephone & Telegraph Co., 163 Tenn. 277, 43 S. W. 2d 390.

\* \* \* \* \* \*

"The carrier insists that such discretion should have been given to it and cites Texas & Pacific Ry. Co. v. United States, 289 U. S. 627, 53 S. Ct. 768, 77 L. Ed. 1410, to sustain its insistence. The decision of the court in that case was based upon a construction of the Interstate Commerce Act. Under that Act the primary duty rested upon the carrier, to establish just and reasonable rates. Title 49 U. S. C. A., § 1, parts (4) and (6).

"To the contrary, the Tennessee statute makes preferences unlawful, Code Section 5418; and the primary duty of fixing rates is placed upon the Tennessee Commission, not the carrier, Code Sections 5397 and 5424. Wherefore, the Commission which was created by the Tennessee Act, and derives its power and authority therefrom, properly construed the Act to vest the authority of fixing the rate in this case so as to remove the discrimination against Nashville in itself and not in the carrier."

We therefore conclude that under the Code Sections herein set out it was the duty of the Commission, after the railroads had furnished its tariffs, to revise these charges in the manner set forth in Sections 5424 and 5425 above.

From a careful examination of the record including all the evidence and the exhibits we concur with the Chancellor in the finding of facts and hold that such findings are supported by a preponderance of the evidence.

No errors of law appearing the assignments of error are overruled and the decree of the Chancery Court is affirmed.

Appellants will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.